J. W. HILL ET AL. *v.* E. E. WOODWARD ET AL.

[57 South. 294.]

1. TENANTS IN COMMON. *Rights and liabilities of tenants. Eminent domain. Right to Compensation. Constitution* 1890.

Where a tenant in common, on the refusal of the administrator of a deceased cotenant to contribute to the payment of taxes, permits the land to be sold for taxes and becomes the purchaser at the tax sale, and thereafter paid the taxes on the land, which was assessed sometimes to him and sometimes to both the tenants in common, *held,* that the heirs of the cotenant were not divested of title to the land by the tax sale nor did the statute of limitations run against them.

2. CONSTITUTION 1890, SECTION 17. *Eminent domain. Public policy.*

No public policy of the state can be allowed to override the positive guarantees of the Constitution or divest persons of their title to property, except in the way the law provides, for public use on due compensation being first made. .

3. TENANTS IN COMMON. *Railroad right of way. Partition. Code* 1906, *section* 3521.

Where lands are owned by tenants in common and a railroad company obtains a deed for a right of way from one of such tenants and constructs its roadbed thereon, under Code 1906, section 3521, the other cotenant can sue for partition of the entire property including the right of way, and public policy does not prohibit partition of the land as against the company.

4. SAME.

If a railroad locates its roadway on property belonging to an individual, as long as the individual owns the land, the railroad may be dealt with as any other trespasser or tenant in common.

5. SAME.

The only way a railroad can secure a right of way is by grant from the owner, or by condemnation proceedings or by the statute of limitations.

6. RAILROADS. *Right of way. Title acquired.*

A railroad company does not acquire an absolute title to its roadway. Such ownership is subject to the use of the property for railroad purposes.

APPEAL from the chancery court of Calhoun county.

HON. I. T. BLOUNT, Chancellor.

Suit by E. E. Woodward *et al.* against J. W. Hill *et al.* for partition.

From a decree granting relief, defendants appeal.

In 1871 Aulston Woodward and T. T. Enochs purchased, by joint deed from J. W. Drake, certain lands in Calhoun county, Miss., the subject of this controversy, and thereby became tenants in common of said land. At that time the land was of little value, being situated in a river swamp, and being what is known as wild or uncleared land, and being entirely without any improvements at all. Taxes were paid on the land until about the year 1885; the land being assessed to Enochs and Woodward until 1881, and after that time to Enochs and estate of A. Woodward, the latter having died in the year 1881. These taxes were paid by Enochs, and it is claimed by the appellants that there was a verbal agreement between the two, about the year 1875 or 1876, that Enochs was to take the property as his own, in settlement of taxes and other claims against it; but no writing to this effect was drawn up, and the assessment was never changed. In the year 1885, Woodward's administrator (his son J. H. Woodward) having refused to contribute towards the taxes, Enochs advised him that he was going to let the land sell for taxes and buy it in, and thus obtain title to the land in himself. Accordingly in 1886 the land was sold for the taxes of 1885, and Enochs bought it in. He obtained a tax deed from the deputy sheriff and tax collector, but the same was never placed of record. This tax sale was made five years after the death of Aulston Woodward. Between the date of the tax sale and the death of Enochs, in August, 1899, the taxes were paid on the land by Enochs, the assessment sometimes appearing as Enochs and Woodward, and other years in the name of T. T. Enochs. Enochs devised the land, on his death, to his daughter,

Mrs. Alice Shell, who paid taxes on it until she sold it in 1900 to J. W. Hill, through whom all the other appellants derived their claim of title. The appellees are heirs at law of Aulston Woodward, and claim the land in controversy as tenants in common with the appellants, and on June 11, 1908, filed their bill in chancery for a partition and sale of the premises and for an accounting. The Southern Railway Company is made a party defendant to the bill, as this company had purchased a right of way through the property and constructed its line of railway. The town of Vardaman had been built adjacent to the railroad on the property here in controversy, and lots were sold to a large number of purchasers, who were also made parties defendant.

The defendants offer three defenses to the suit: First, That Aulston Woodward before his death conveyed the property by verbal agreement to T. T. Enochs, his co-tenant, in liquidation of certain indebtedness due Enochs by Woodward. Second. That in recognition of his title to said property Enochs had paid taxes on same, and in accordance with the custom then prevalent in that county, in order to perfect his title, had allowed the property to sell for taxes and bought it in his own name, and thus held it adversely to other claimants, and his title had ripened by adverse claim, many years before the bringing of this suit. Third. That the complainants were estopped from setting up any claim of interest in this land, because said land was not included in a partition suit of the lands of Woodward heirs, and because J. H. Woodward, who was the agent and attorney in fact of the Woodward heirs, had made no objection to the tax sale and purchase of the land thereat by Enochs, or to the subsequent sale of the premises at public auction, when lots were bought by the various defendants. The Southern Railway Company, which was made a party defendant by the amended bill, claims that a partition of the property should not apply as against said rail-

road, because of public policy. This feature of the case is dicussed fully in the opinion of the court.

The chancellor found for the complainants. The decree contained the following special findings of fact: (1) That complainants are not barred by any statute of limitation; (2) that complainants are not estopped from asserting their claim to an interest in the land; (3) that Aulston Woodward was a tenant in common with T. T. Enochs at the time of the death of the former; (4) that Aulston Woodward's undivided half interest in the land descended to complainants; (5) that complainants have been tenants in common with Enochs until the death of the latter in 1899; (6) that no statute of limitations be-began to run against the complainants during the lifetime. of T. T. Enochs; (7) that there was no adverse possession or holding of this land by T. T. Enochs during his lifetime, against complainants; (8) that complainants are tenants in common with defendants; (9) that they are entitled to the relief prayed. The court further ordered that the clerk be appointed a commissioner to sell the land in controversy, including the right of way purchased by the railway company, and to report back to the board on a subsequent date, and to take and state an accounting. The chancellor granted an appeal from this decree.

*A. T. Stovall,* for appellant.

*Weston et al.* v. *Foster et al.,* 7 Metcalf (Mass.) 297. You couldn't partite the right the railroad had to pass over the land, and you couldn't sell it and divide the proceeds because it would be against public policy to segregate and cut out one mile of the railroad, and sell it to the highest and best bidder; it would thwart and destroy the very purpose of the creation of the railroad to serve the public, and so that ground of demurrer was good and should have been sustained, and yet the decree that the court rendered ordered all this land sold regard-

less of the right the railroad company had to pass over that land. There was no reservation made in order that it might take some steps to condemn or negotiate for the right with the rest of the tenants in common, if they should be so inclined.

As to the second ground of demurrer, "the bill seeks a partition against the railroad, when it is contrary to the public policy of the state of Mississippi, to decree a sale for partition, or partition in kind, of a railroad, on the ground that any division of the property would impair its usefulness, in which the public has an interest." The mere suggestion or statement of this ground is convincing to one who is interested in the public welfare of the state. The statement of the ground is axiomatic. We know that you cannot levy on and sell a railroad company's roadbed and right of way like you can any other property. The public have an interest in the maintaining of the railroad, a going concern, especially so in this day and time, and they are asserting that interest with a good deal of vigor. They are not only interested in the rates charged to transport passengers and freight, but they are interested in the schedules, and that the train shall go, and when it shall go, and how it shall go, and the appliances it shall go equipped with, and the character of roadbed it shall go on, etc., all going to show that the public interest demands that a private individual shall do nothing, and certainly a court of equity should do nothing, to retard the railroad in its undertaking, and, in this instance, practically destroy it, if it should not be able by some combination of circumstances to buy in this quarter section of land, over which it has an easement or right to operate trains to serve the public. I say public policy annuls the decree of this court as far as this railroad company is concerned. See authorities: 21 Am. & Eng. Enc. Law (2nd Ed.), p. 1163; 30 Cyc., p. 178; 2 Elliott on Railroads (2nd Ed.), section 520; *Connor* v. *Tenn. Central*

*Railway Co.,* 109 Fed. 931; same case, 48 C. C. A. 730, and 54 L. R. A. 687; *Pittsburgh C. C. & St. L. Ry. Co.* v. *Fish,* 63 N. E. Rep. 454; *John C. Brady et al. Exrs.* v. *Bradley Johnson et al.,* 20 L. R. A. 737, *note; Gooch* v. *McGee,* 35 Am. Rep. 558.

*Haman & Bates,* for appellants.

A cotenant can acquire title against his cotenant by adverse possession, coupled with notice thereof. See *Hignite* v. *Hignite,* 65 Miss. 447, 4 So. 345; *Bently* v. *Callaghand,* 79 Miss. 302, 30 So. 709, and cases there ·cited; *Dobbins* v. *Dobbins,* 10 L. R. A. N. S. 185, 141 N. C. 210, 53 S. E. 870, and notes with cases cited; 1 Cyc. 1071, 44b, and notes, or by actual ouster and adverse possession; *Eastman, Gardner & Co.* v. *Hinton,* 86 Miss. 604, 38 So. 779. The rule is well announced in *Eastman, Gardner & Co.* v. *Hinton,* where the court says: "The facts of this case do not bring it within the scope of the rule which prevents one cotenant from acquiring a title in himself to the common estate without either an actual ouster, or actual or constructive notice of the assertion of the hostile claim."

That expression while *dicta* in that case probably is supported by the decision and we think is an announcement of the true rule that a cotenant in order to establish title in himself to the common estate must prove it, either on actual ouster, or actual or constructive notice of the assertion of hostile claim.

Limitations begin to run and the dispossessed tenant's right of action accrues when notified of unequivocal intent on part of his cotenant to oust him. *Bently* v. *Callaghan,* 30 So. 709; *Alsobrook* v. *Eggleston,* 69 Miss. 833, and other cases cited therein. Or that his claim and possession is hostile. 1 Cyc., 1073c; *Jonas* v. *Flannigan,* ·69 Miss. 577.

Physical violence is not necessary to effect an ouster. *Bently* v. *Callaghan, Ib.;* 1 Cyc. 1073. Evidence suffi-

cient to show notice so as to start limitations. *Wheeler* v. *Taylor,* 32 Ore. 421, cited in note 15, test in 1 Cyc. 1973.

Estoppel. Aulston Woodward granted the land by parol to Enochs. Enochs assumed possession under the grant. Aulston Woodward died and his heirs cognizant of the facts, and knowing their rights, ratify the acts of Aulston Woodward, file a suit for partition of the lands of Aulston Woodward in the county of the land in controversy, which suit is a matter of record, and in that suit the lands of which partition is asked are described as all the land of the Aulston Woodward estate, but which suit does not include the land in controversy. They know Enochs is claiming the land and paying the taxes on it. Many years pass and T. T. Enochs dies having willed the land in controversy to a daughter, who sells for a valuable consideration to an innocent party, .J. W. Hill, whose deed is placed on record as required by law as notice to the world. Some of the Woodwards are residents of the county, one of them acting by written authority as agent and attorney in fact and real representative of the other heirs. This agent lives near the land, is fully informed of his and his principal's rights, was at Pittsboro the day of the sale of the land for taxes, when T. T. Enochs bought it in and was informed that it would be sold for taxes on that day at Pittsboro.

After this long abandonment of their claim and after .Jim Woodward had in this way assisted in starting the town and getting people, innocent purchasers, to invest their money there and improve the land and enhance prices, he with his principals file suit to revive a claim long abandoned. *Railroad Company* v. *Ragsdale,* 54 Miss. 200.

Certainly if there is no estoppel in the acts of Jim Woodward yet his acts and the sale show that he had recognized the claim of Enochs and are strongly corroborative of evidence showing abandonment by Woodward and hostile claim by Enochs.

*Luckett & Guston,* for appellees.

It is a well-settled principal of law that tenants in common, not in reversion or remainder, of a tract of land may by a partition proceeding under the statutory laws of Mississippi, have the same partitioned in kind among them, and if incapable of partition in kind, as in this case, then sold for division of proceeds among cotenants. Any one or more of such cotenants may file the bill for partition. Chapter 103 Miss. Code 1906. Partition of land is a matter of right, the law recognizing that it is better to hold land in severalty than in common. Appellants contend in their brief that adverse possession continued for the prescribed time under circumstances prescribed, confers title, having reference, of course, to the facts in the case at bar as viewed by them. The facts are, no one was in actual possession of this land until J. W. Hill went into possession of same under his deed to same from Mrs. Alice Shell December 20, 1900. T. T. Enochs, the cotenant of Aulston Woodward, died in 1899 and just before he died he made his will in which he devised this land to his daughter, Mrs. Alice Shell. The deed from Mrs. Shell to Hill in 1900 constituted the first hostile act or claim of ownership to this land, unless the court should hold that the devise of this land by T. T. Enochs to his daughter, Mrs. Shell, in 1899, constituted the first act of hostile ownership. If the statute of limitations of ten years began to run from either date, still complainants would not be debarred from bringing this action, for this suit was filed in May, 1908. See *Gardner* v. *Hinton,* 86 Miss. 604. This case holds that to constitute presumptive notice to all parties in interest of the claim of the occupant, there must be "actual adverse possession," the nature of the occupancy, the extent of the possession, the character of the control, the rights of ownership exercised over the land, being the determining factors in the eyes of the law to constitute presumptive notice to the world; and

this actual occupancy must be coupled with no obligation on the part of the adverse claimant to give actual notice of his adverse claim to the other tenants in common, as where a tenant in common conveys the whole estate in fee and the vendee sets up a claim in his own right to the whole tract of land. Even if T. T. Enochs, being the original cotenant of Aulston Woodward, had been in actual possession of this land, asserting a hostile claim thereto, any time from the joint purchase in 1871 to his death in 1899, we submit that under those circumstances, which did not exist, he would have been under such relation to the other tenants in common as to have imposed upon him the obligation of giving actual notice to them as a condition precedent to the assertion of such hostile claim, for the possession of one tenant in common is the possession of all, and without actual notice it is difficult to tell just when one tenant in common is asserting in himself full claim to the whole land, in the absence of an actual ouster. *Hignite et al.* v. *Hignite,* 65 Miss. 447. In this case the cotenant claiming adversely offered to sell the land as his own to a third party, yet the court held that there was not sufficient adverse holding by the cotenant in possession to put in operation the statute of limitation as against the other cotenants. See, also, the case of *Alsobrook* v. *Eggleston,* 69 Miss. 833, where it was held that the payment of taxes and actual entry upon the land, and clearing it and building a house upon it, and claiming ownership over it was not sufficient evidence of an ouster nor of adverse holding in the absence of actual notice to the other cotenants of such adverse claim of ownership, especially where such adverse claimant had within the time recognized even inferentially, the title of the other cotenants in the land.

*Dunn & Patterson,* for appellees.

In a case of this kind, considering the nature and character of the land in controversy, owned by cotenants, it

would have been almost impossible for one cotenant to have acquired title as against his cotenant by any means less than actual notice to him, either by directly notifying each and every one of the cotenants or by some proceeding at law of which they were bound to take notice that the tenant in possession was intending to oust them. Because with reference to this property there could be no presumption of abandonment on the part of the Woodward heirs, for the reason that there was nothing to abandon. There were no rents nor profits from it which one tenant could appropriate exclusively to himself, and this would have been about the only way of proving exclusive and hostile possession of this character of land short of direct notification.

For an admirable discussion of this whole question, see note to *Joyce* v. *Dyer,* 109 Am. St. Rep. 609.

Argued orally by *H. H. Creekmore,* for appellants.

Argued orally by *J. T. Dunn* and *T. P. Guyton,* for appellees.

MAYES, C. J., delivered the opinion of the court.

The title of appellees to the land in controversy, to the extent claimed by them, is established so clearly as to put it beyond the realm of controversy. The only question in the case which requires discussion is the question raised by the railroad company as to the right of appellees to have partition as against them. It is argued that the railroad company secured deeds granting to it a right of way over the land, and that it has constructed its line of railway on same, and is now using the property in the operation of its road from Oklona, through the town of Vardaman, to Calhoun City, which is the terminus of the road, and is eight or ten miles west of the town of Vardaman. The facts show that the railroad company secured by its deeds only a one-half interest in the property; the other half interest belonging to ap-

pellees. On account of the small quantity of land, taken
in connection with its charter, and because of the numer-
ous complainants and defendants, the chancellor very
properly ordered a sale of the land for partition, which
order of sale also included that part occupied by the rail-
road company. On behalf of the railroad company it
is argued that no partition should have been ordered as
against it, because such judgment is contrary to public
policy. In support of this contention counsel cite many
cases. We shall discuss those cases later on in this opin-
ion.

Under section 17 of the Constitution of 1890 it is be-
yond the power of the state or any corporation to take
or damage the property of any person, even for a pub-
lic use, without due compensation being first made. The
railroad company has constructed its roadway on land
to which it has not the complete title. It has thus taken
private property for a public use without having com-
pensated the owners thereof to the extent of their in-
terest, and has not procured their title, in the face of
the fact that the records in the clerk's office fully dis-
close same. No public policy of the state can be allowed
to override the positive guaranties of the Constitution,
or divest persons of their title to property, except in
the way which the law provides.

Section 3521 of the Code of 1906 authorizes the parti-
tion of land held by joint tenants, tenants in common,
etc., and the railroad is of that class of tenantry. The
statute makes no exception when one of the tenants in
common happens to be a railroad. In support of the
contention of counsel that public policy forbids the per-
tition of this land as against the railroad company, our
attention is first called to the case of *Weston et al.* v.
*Foster,* 7 Metc. (Mass.) 297. But the question involved
in the above case was not the same as the one involved
in this case. In the *Foster case, supra,* the court merely
held that as the railroad company had only an easement

in certain property of which partition was sought, and no title, it was not a necessary or proper party to the proceedings.

Our attention is directed by counsel to 21 Am. and Eng. Ency. of Law, p. 1163, and 30 Cyc., p. 178. The text merely states that there are certain kinds of property of which the court will refuse to make a partition on the grounds of public policy; that the courts have refused to decree partition of a railroad, on the ground that any division of the property would impair its usefulness, in which the public has an interest. The notes to the text in both of above volumes cite the case of *Railway Co.* v. *Railroad Co.,* 38 Ohio St. 614. An examination of that case shows that the facts of that case make of it a different case from the one now before the court. It appears from the above case that one railroad corporation purchased from another undivided interest in the latter's railroad. Before this could be done in the state of Ohio a statute allowing it was necessary, and the legislature of the state passed an act in relation to insolvent railroad companies which authorized the sale and purchase. The act provided that the sale could be made, provided it be done without impairing the usefulness of the selling road. In this way a tenancy in common was created, followed by a subsequent attempt on the part of the purchasing road to partite the road. The Ohio court held that there could be no partition of this property, either under the statute or in equity. The court said: "The statute authorized the sale of an undivided interest in the road between Newark and Columbus by the Central Ohio Company to the Steubenville & Indiana Company, 'if the same could be done without impairing the usefulness thereof to the Central Ohio Company.' This condition was unquestionably inserted in the statute upon considerations of public policy. In the deed of conveyance it was recited that the sale did not impair the usefulness of the section to the ven-

dor company. It was not meant, either by the statute or the deed, that the exclusive use of the section was preserved to the Central Company, but that in the joint use of the section reasonable facilities were and would be afforded the Central Company for conducting its business over this line of the road; in other words, that one-half of the capacity of the road was sufficient to supply the necessities of the vendor company. . . . It was the use of an undivided road, not the half of the road when divided, that was thus secured to the vendor; and this not for a time limited at the pleasure of the purchaser, but for all time. This is inferable from the fact that no further power to alienate existed in either party, save such only as might result from the power to create debts. . . . The legislature did not contemplate or intend that a partition of this property should be made, but, on the other hand, did intend a perpetual joint use of the highway.'' In the last case the selling road could not make the sale until authorized so to do by the legislature of the state and when that body authorized the sale it stipulated that it could only be done when the sale did not impair the usefulness of the road. The court held that the partition would impair its usefulness, and that any attempt so to do was in violation of the act, and refused to order it. The above case does not hold that public policy forbids the partition of land on which a railroad is situated, when the railroad company has become a tenant in common with others whose title has never been parted with by them.

In the case of *Pittsburgh Ry. Co.* v. *Fish,* 158 Ind. 525, 63 N. E. 454, it appears that the town of Winamac, Indiana, undertook to sell a small portion of the roadway of the railroad company for the purpose of satisfying a lien claimed by the town as against the property of the railroad for certain local improvements assessed against same, and which the railway company failed or refused to satisfy, and the court said: ''When the pub-

lic grants a franchise to a railroad corporation, and gives it the right of eminent domain, it does so upon the theory that benefits will be returned. Hence it is that the public has an interest in the exercise of such a franchise that a court of equity, in the absence of a specific statutory provision, will not suffer disturbed, when private right may find another adequate remedy. Accordingly it has been held that such property of a railroad company as is essential to the operation of the road, and in carrying forward its corporate purpose, will not be ordered sold by piecemeal to satisfy a statutory lien; but in lieu of an order of sale the court will award the plaintiff a personal judgment, to be collected as ordinary judgments at law are collected.'' The above case was decided as it should have been, but we fail to see that it supports the contention of railroad in this case. No question of the failure of the railway to procure title, in the first instance, to the land on which it had established its line, was involved in the above case. Ample remedy was left the creditor to collect his debt, without destroying the publc usefulness of the railroad. The creditor had no vested property rights in the road. He had only the right to pursue such remedies for the collection of his debt as the law allowed, and if ample remedy was afforded him, without disturbing the rights of the public, the creditor had no cause of complaint. But in this case the appellees own an interest in the land itself. They owned it before the road was constructed, and they still own it.

The case of *Gooch* v. *McGee,* 83 N. C. 59, 35 Am. Rep. 558, deals with the sale of corporate property under execution. The case merely holds that, when a public corporation acquires real estate for corporate purposes under eminent domain powers, such real estate can only be sold under execution subject to the performance of the duties and obligations imposed by law on the corporation. The case of *Connor* v. *Tennessee Central Ry. Co.,*

109 Fed. 931, 48 C. C. A. 730, 54 L. R. A. 687, turns on
the same principle of law. Connor attempted to enforce
a contractor's lien by selling a specific part of the road-
bed of the railway company to which it was claimed the
lien attached, and the court held that this could not be
done; that the debt must be collected in the ordinary
way and by ordinary processes, by the appointment of a
receiver, or collected from the tolls or income, and, if
this should prove insufficient, then the decree should sub-
ject the entire property and its franchise to sale as an
entirety.

It seems useless to further discuss the authorities re-
lied on by counsel. Not one of them have any applica-
tion to the facts of this case. All the cases relied on
by counsel deal with the collection of a debt after the
railroad has acquired title to its roadway in some way
known to the law; and when this is once done the rail-
road acquires the ownership, subject to the burden im-
posed that it will always be used so as to promote a pub-
lic use of same.

A railroad corporation does not acquire an absolute
title to its roadway. It does not acquire a title that it
may sell or dispose of at pleasure, without reference
to the right of the. public to use same. The ownership
of the railroad company of its roadbed is different from
that of an individual or a private corporation. The
basis of which the grant to it of eminent domain powers
rests is the fact that its property is to be used for a
public purpose. The right of the public to have it so
use its property is imposed on the railroad property the
very instant it obtains title, whether the title is obtained
by private purchase or through eminent domain proceed-
ings. Because of this fact, and because a judgment cred-
itor can obtain no higher equities in a judgment debtor's
property than the debtor himself had, the courts have
refused to allow a judgment creditor to destroy the pub-
lic usefulness of a railroad by levying on a part of its

roadway and selling it for the payment of a debt, thus destroying the unity and usefulness of the road. Under the terms of its creation it is bound to run its road for the public use. It cannot rid itself of this burden. It cannot sell its road by piecemeal itself, and no judgment creditor can do so. But no public burden can be imposed on land where the public has never acquired any title, and therefore no right to have it used for the public good. Before the public burden can be imposed on the land, the title must be acquired. If a railroad locates its roadway on property belonging to an individual, as long as the individual owns the property, the railroad may be dealt with as any other trespasser or tenant in common.

The case of *Beck* v. *Railroad Co.*, 65 Miss. 172, 3 South. 252, has already settled the question involved in this case so far as this state is concerned. This court, speaking through Judge Campbell, said: "The proposition that a railroad company may build upon the land of one who does not object, and thereby secure the right of way, subject only to liability to his claim for damages, is not maintainable in this state, whatever may be held elsewhere. A parol license may shield from liability for trespass; but it is revocable, and, when revoked, is no longer a protection. The only way to secure the right of way is by grant from the owner, or by condemnation proceedings, or by the statute of limitations. If the road is built without securing the right of way, the owner, who has not precluded himself, may recover damages for the trespass, and may recover the land occupied by ejectment, or may enjoin in chancery the use of the land. The fact that the charter authorizes either the landowner or the company to institute proceedings for condemnation does not in any manner abridge the rights of the landowner. He is not bound to take the initiative as to such proceedings. If a company desires the right of way, it must take steps to secure it. If it does not, it must answer for every invasion of the rights of the landowner."

In the state of Mississippi a fee-simple title to land means absolute and unqualified ownership as against railroads and all persons whomsoever. It means that such land cannot be taken from the owner, except by due process of law and upon due compensation being paid therefor. It means that with this title go all the incidents of the title, one of which is to have it partited as against a tenant in common, either in kind or by sale, controlled only by such method of partition as will protect the best interest of all parties; but partition may be had, it matters not who the tenants in common are.

*Affirmed.*

Petition to modify judgment or suspend issuance of mandate a reasonable time to allow railroad company to condemn property.

Motion sustained until further order of court.