Rafael y Amado Bernardo Colón, demandantes y apelantes, *v.* Central Cambalache, Inc., demandada y apelada.

No. 5808.—*Sometido:* Marzo 13, 1934. *Resuelto:* Julio 19, 1935.

*Lens & Susoni,* abogados de los apelantes; *Félix Santoni,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Para los fines de este recurso podemos hacer un extracto de algunos de los hechos hallados por la corte inferior, como sigue:

"Se trata de una acción negatoria de servidumbre incoada por Rafael y Amado-Bernardo Colón contra Central Cambalache, Inc., en cuya demanda, al efecto radicada, alegan, sustancialmente, los demandantes, ser dueños de una parcela de terreno, ubicada en la jurisdicción de Arecibo, compuesta de tres cuerdas setenta céntimos, que adquirieron por compra a Carmelo J. Colón, libre de gravámenes, y que la demandada, sin el consentimiento de los demandantes ni de los que le precedieron en el dominio de la misma y sin compensación alguna, ha tendido sobre la referida parcela una vía férrea fija de un ferrocarril privado de su pertenencia, que ocupa una faja de terreno en la finca de los demandantes de tres metros de ancho y la atraviesa de este a oeste, y que, a pesar de

los requerimientos que los demandantes han efectuado cerca de la demandada, ésta se ha negado a levantar dicha vía.

"Una demanda enmendada fué contestada por la demandada negando todas y cada una de las alegaciónes de la misma, y como defensas especiales alegó las siguientes:

"A. Que doña Clara Álvarez, conocida también por Sagastibelza, constituyó servidumbre de paso, a perpetuidad, a favor de Central Cambalache, Inc., mediante la correspondiente consideración, para que la demandada tendiese sus vías y pudiese circular sus trenes, quedando gravada con dicha servidumbre una finca de la propiedad privativa de la referida doña Clara Álvarez, compuesta de 129 cuerdas 25 céntimos, radicada en los barrios de Hato Abajo y Hato Arriba, de Arecibo.

"B. Que la finca de tres cuerdas y 70 céntimos, que alegan los demandantes pertenecerle, colinda por el sur con terrenos de la sucesión de doña Clara Sagastibelza, conocida también por Álvarez, pertenecientes a la finca de 129 cuerdas y 25 cétimos.

"C. Que doña Clara Sagastibelza o Álvarez falleció, siendo sus herederos doña Saturnina Álvarez o Sagastibelza y Carmelo, Rafael y Amado Colón, y estos tres últimos, únicos cesionarios de la herencia, siendo la finca de 129 cuerdas 25 céntimos actualmente de la pertenencia de ellos tres.

"D. Que don Sebastián Figueroa, esposo de doña Clara Álvarez o Sagastibelza, constituyó también otra servidumbre a perpetuidad, mediante la correspondiente compensación, a favor de la demandada, sobre una finca de 208 cuerdas sita en el barrio de Hato Abajo de Arecibo.

"E. Que el referido don Sebastián Figueroa, al fallecer dejó como heredera a su esposa Clara Álvarez o Sagastibelza y a esta última heredaron Carmelo, Rafael y Amado Colón."

"F" se refiere a la inscripción de las fincas y puede omitirse el transcribir este párrafo.

"G. Que tanto la finca de 129 cuerdas 25 céntimos como la de 208 cuerdas colindan por el norte con finca que perteneció a don Eduardo Rosso, adquirida más tarde por Carmelo J. Colón, quien segregó de ella tres cuerdas y 70 céntimos y vendió a sus hermanos Rafael y Amado Colón (los demandantes)."

"H" se refiere a "f" y puede igualmente ser omitido.

"I" lee así:

"Que tanto Carmelo J. Colón como sus hermanos Rafael y Amado Colón, conocían acerca de las servidumbres que gravan las fincas de 129 cuerdas 25 céntimos y de 208 cuerdas y sabían que fueron constituídas por don Sebastián Figueroa y doña Clara Álvarez.

"J. Que los hermanos Colón, por estar enterados de estas servidumbres y por observar visualmente los rieles tendidos por la demandada, hace catorce años, y los trenes que operan desde dicha fecha, no son terceros; y que adquirieron de sus causantes a sabiendas de la existencia de tales servidumbres.

"K. Que los hermanos Colón se han beneficiado con la vía que tendiera la demandada, cargando y transportando las cañas de su pertenencia.

"L. Que la demandada construyó de buena fe la vía de referencia, invirtiendo en dicha obra muchos millares de dólares y haciéndola de carácter permanente sin oposición de los demandantes o de ninguna otra persona.

"M. Que los hermanos Colón han ejecutado actos que conllevan el reconocimiento y aceptación de tales servidumbres.

"N. Que si la vía férrea pasara por la parcela descrita en la demanda, ello se debería a que, siendo los hermanos Colón propietarios de tierras colindantes, habrían hecho alguna involucración o confusión al objeto de aparentar tal cosa."

Después de revisar las alegaciones y de hacer una historia del título, la corte, copiando de la demanda, describe la finca de los demandantes en la siguiente forma:

RÚSTICA: compuesta de tres cuerdas setenta céntimos de otra, equivalentes a una hectárea, cuarenta y cinco áreas y cuarenta y dos centiáreas de terreno de vega dedicado a cañas de azúcar hoy, en lindes, por el norte, con Luisa Colón, separados por el paso de río denominado Villanueva; al sur, Sucn. de Clara Sagastibelza hoy; al este, el Río Santiago, y al oeste, la finca principal que es segregación, propiedad de don Carmelo J. Colón Sagastibelza."

Que la referida finca estaba inscrita en el registro de la propiedad libre de gravámenes.

Entonces la corte va al origen de la finca de 37.95 cuerdas de que fué segregada la parcela de 3.70 cuerdas. La corte describe el origen de las otras tierras y sus linderos. Se

desprende más particularmente que la finca de 129.25 cuerdas tenía una casita que se describe como enclavada cerca del lindero norte. La corte también hace un resumen de la evidencia al efecto de que tiende a demostrar un impedimento (*estoppel*) de parte de los demandantes para solicitar que los rieles fueran removidos. Luego de otras manifestaciones, la corte continúa diciendo:

"En cuanto a si los rieles de las vías tendidas por la demandada Central Cambalache Inc. están sobre la parcela de 3 cuerdas 70 céntimos, como alegan los demandantes, o dentro de la finca de 129 cuerdas 25 céntimos, como alega la demandada, la prueba es contradictoria.

"En realidad, la única cuestión a decidir en este caso es ésa. Es una cuestión tangible, y por ello la corte efectuó una inspección ocular del sitio de referencia, levantando la correspondiente acta, en donde consta la conclusión del juzgador, luego de efectuada la misma.

"Tratárase de dilucidar una servidumbre de paso sobre una finca cuyas colindancias estuvieran debidamente fijadas y delimitadas y rodeada por fincas pertenecientes a personas ajenas a los reclamantes y la cuestión sería relativamente fácil. . . . Pero en este caso que nos ocupa, nos encontramos con una situación verdaderamente rara e inusitada, como es la de que todas las parcelas colindantes con la finca de 3 cuerdas 70 céntimos, de los demandantes, pertenecen también a estos mismos, y, ¡claro está!, perteneciendo todas ellas a los mismos propietarios, carecen de signos aparentes que marquen y fijen las respectivas colindancias de cada una . . . ."

La corte inferior entró en otras consideraciones, a que nos referiremos más tarde. Se dictó sentencia en favor de la demandada.

■■ En apelación, los apelantes, entre otros, aducen el siguiente señalamiento de error:

"1. La Corte de Distrito de Arecibo cometió manifiesto error al no dar crédito y validez a la evidencia testifical y pericial sobre el hecho que la vía de la demandada está en la finca de los demandantes objeto de la acción negatoria de servidumbre."

Al iniciar la discusión del primer señalamiento los apelantes acertadamente dicen que en una acción negatoria de

servidumbre, el demandante sólo está obligado a probar su título y los actos materiales de la parte demandada que indebidamente graven o limiten el derecho del demandante; que corresponde a la parte demandada probar la existencia de las servidumbres; y que éste es uno de los pocos casos en que el peso de la prueba recae sobre la parte demandada. Luego de hacer otras consideraciones, los demandantes dicen:

"En vez de negar en forma clara y específica que sobre la finca de los demandantes no existe vía alguna de la demandada, o que existe con justo título, la Central demandada negó en forma general los hechos de la demanda y después, en forma hasta cierto punto contradictoria, alega que otras personas que no son partes en este pleito le habían otorgado dos servidumbres de vía férrea, sobre dos fincas distintas por completo en cabida y colindancia de la descrita en la demanda, y que si la dicha vía cruza la finca de los demandantes objeto de esta acción, será por confusión o involucración, debida a las circunstancias del terreno."

Un poco antes los demandantes alegan que las defensas especiales tendían a introducir confusión en el caso.

Convenimos necesariamente en que una vez que un demandante ha probado su título, el peso de la prueba recae sobre la parte demandada para demostrar una servidumbre o derecho a pasar. Empero, incumbe primordialmente al demandante demostrar su título. En el presente caso la controversia se redujo a si los rieles se hallaban colocados al norte o al sur de la colindancia de la finca de 129.25 cuerdas. El peso recayó claramente sobre los demandantes mismos para demostrar dónde estaba el lindero sur de la parcela de 3.70 cuerdas. Todos los hechos de la demanda fueron negados. La demandada, por supuesto, no admitió que el lindero sur de la parcela de 3.70 cuerdas se hallaba en el sitio en que alegaban los demandantes.

Citamos de la opinión de la corte inferior para demostrar que la verdadera controversia en el caso fué dónde se hallaba exactamente el lindero sur de los demandantes. Ésta fué primordialmente casi la única cuestión en disputa.

No hemos podido hallar ningún caso que claramente diga que cuando se ha tenido una servidumbre privada de vía férrea y un demandante alega que la misma se halla sobre su finca, le incumba demostrar los límites de la finca. Ésta parecería ser de ordinario la regla y prácticamente ha sido admitida por los demandantes. Sin embargo, hemos hallado un número de casos en que se demuestra que un demandante podía acudir a una acción reivindicatoria contra una compañía ferroviaria que está en posesión del terreno y de los rieles: *Dodd* v. *St. Louis & H. Ry. Co.,* 18 S. W. 1117; *Pittsburgh, V. & C. Ry. Co.* v. *Oliver et al.,* 19 Atl. 47; *Dulin* v. *Ohio River R. Co.,* 73 W. Va. 166, 80 S. E. 145, Ann. Cas. 1916 D, 1183; *Hill* v. *Woodward,* 100 Miss. 879, 57 So. 294, Ann. Cas. 1914 A, 390.

También citamos de la opinión de la corte inferior para demostrar cuán difícil ha sido la cuestión de hecho en este caso. La conclusión de la corte fué que no había signos materiales o linderos naturales para determinar definitivamente este extremo sur de la finca de los demandantes.

Tanto en el curso de la vista como en el de la nueva vista de este caso teníamos dudas respecto a si los demandantes no habían presentado un caso que merecía la revocación de la sentencia, pero durante las varias ocasiones en que hemos considerado los hechos no llegamos a una conclusión definitiva contraria a la resolución de la corte sentenciadora.

El hecho más fuerte en favor de los demandantes fué que en la descripción de la finca de 129.25 cuerdas el notario hizo constar que en el lindero norte de la misma se hallaba una casita; por lo menos tres testigos de los demandantes declararon respecto a la existencia material de esa casa y que la misma se hallaba bastante al sur de los rieles puestos por la demandada, mas uno de ellos fué el agrimensor cuya declaración no era claramente de conocimiento propio. Debe intercalarse que en la época en que se pusieron los rieles la demandada, Central Cambalache, estaba como arrendataria en posesión prácticamente de todo el terreno en controversia.

y que, por tanto, fácilmente pudo cometer un error al tender los rieles.

La corte dijo:

"Una cosa, sin embargo, llamó poderosamente la atención del Juez, en el acto de la inspección ocular, y ella fué el *espeque* ubicado en la misma esquina que forma el camino del 'Tanque' con el resto de la parcela de Rosso, o de los demandantes. Y también hubo de fijar su atención el juzgador en que, si bien en la escritura de segregación y venta de la parcela de 3 cuerdas 70 céntimos, se dice que la misma colinda por el Oeste con la finca principal de que se segregó, es lo cierto que entre dicha parcela y el resto de la finca existe el camino del 'Tanque', que tiene una anchura de más de tres metros. ¿Por qué, en vez de fijar la colindancia Oeste de la parcela en controversia con la finca principal de que se segregó, no se asignó con el camino público del 'Tanque'?

"Hay otra circunstancia digna de la mayor consideración al resolver este caso. Si admitiésemos que la colindancia Sur, de la parcela de 3 cuerdas 70 céntimos con la finca de 129 cuerdas 25 céntimos, es la que alegan los demandantes ser, o sea, más al sur de las vías, tendríamos que, tanto la finca anteriormente de Rosso, en toda su integridad, como la parcelita de 3 cuerdas 70 céntimos, posteriormente segregada, no sólo colindaría por el Oeste con el resto de la finca principal, sino también colindaría por el Oeste con parte de la finca de 208 cuerdas de doña Luisa W. de Juarbe, después de Sebastián Figueroa y hoy de los demandantes, ya que la parcela en disputa entraría a manera de cuña entre la finca de 208 cuerdas y el río Santiago, hasta encontrar la colindancia Sur con la finca de 129 cuerdas 25 céntimos. Y ello no es así, porque ni en la antigua descripción que de la finca que Rosso vendiera a Carmelo J. Colón, y éste a sus demás hermanos, ni en la que de la parcela de 3 cuerdas 70 céntimos se hace al segregarla del resto de la finca principal, se fija la colindancia Sur, como entrando a manera de una cuña, entre el camino del Tanque y el río Santiago; sino que se designa la colindancia Sur como una colindancia recta.

"Por otro lado, en la descripción de la finca de 129 cuerdas 25 céntimos, y sobre la cual se constituyó la servidumbre de paso por su propietaria doña Clara Álvarez o Sagastibelza a favor de la demandada Central Cambalache Inc., se dice que la misma colinda por el Norte con tierras de don Eduardo Rosso, en lugar de Rosario Álvarez, con doña Luisa Waterson y un camino vecinal que es el

del 'Tanque' a 'Dominguito'. Este camino vecinal del 'Tanque' a 'Dominguito' viene bordeando toda la colindancia Oeste de esa finca de 129 cuerdas 25 céntimos, y al llegar al sitio en que está ubicado el *espeque,* o sea en la esquina que forma dicho camino con la finca de Rosso, tuerce un poquito hacia la derecha o sea hacia el Este, y por ello se ve que dicha finca colinda por el Norte con el mencionado camino. Pero si aceptáramos la colindancia de dicha finca, tal como la quieren hacer aparecer los demandantes, tendríamos que en vez de colindar por el Norte con dicho camino, con Luisa Waterson y Eduardo Rosso, sólo colindaría con Eduardo Rosso y Luisa Waterson, y no con parte del camino.

"

"De los planos aducidos en evidencia en este caso, los únicos que han merecido crédito a la Corte son los dos antiguos, que se refieren: uno, a la finca de doña Luisa Waterson de Juarbe, más tarde de don Sebastián Figueroa, de 208 cuerdas, levantado por el agrimensor B. M. Martínez Mora, en el año 1903 y el otro es el plano de la finca de 129 cuerdas 25 céntimos, denominada 'El Tanque', propiedad de Doña Clara Álvarez o Sagastibelza, hoy de los demandantes, levantado por el agrimensor don Arturo Puig en el año 1909. El plano levantado en 4 de diciembre de 1930 por el mismo agrimensor don Arturo Puig, no le ha merecido mucho crédito al juzgador, por varias circunstancias y razones: primera, porque el Juez conoce bastante de mensura, tanto que su primera profesión antes de dedicarse a las leyes fué la de agrimensor, y sabe perfectamente que un plano levantado sobre las bases tan falsas en que fué levantado ése a que nos referimos, adolece de graves defectos, ya que sólo se funda en las informaciones suministradas por los propios interesados; segunda, porque la mensura de la finca de 3 cuerdas 70 céntimos y el correspondiente plano de la misma se verificó sin que la demandada tuviese participación alguna en ella, ni siquiera en indicar los puntos existentes al tiempo del tendido de sus vías; y, tercera, porque no existiendo signos tangibles, aparentes y fijos, de la colindancia Sur de la parcela de tres cuerdas 70 céntimos con la de 129 cuerdas 25 céntimos, y a mayor abundamiento, siendo todos los terrenos, tanto los de una como los de otra, propiedad de los demandantes, es fácil confundir la verdadera colindancia, sobre todo si no existen signos indestructibles de las mismas.

"De la inspección ocular verificada, la Corte ha llegado a la conclusión que la verdadera colindancia sud de la parcela de 3 cuerdas

70 céntimos es la que indica la línea de colindancias de la finca de 208 cuerdas con la finca de Rosso, que se marca en el plano de 4 de diciembre de 1930 *N. 75°O'*, prolongándola hacia el Este y pasando por el espeque hasta arribar a la orilla del caño Santiago. Y, que siendo ésta la verdadera colindancia Sur de dicha parcela con la finca de 129 cuerdas 25 céntimos, viene a resultar que las vías quedan al Sur de dicha línea, o sea dentro de la parcela de 129 cuerdas 25 céntimos, perteneciente una vez a doña Clara Álvarez o Sagastibelza y hoy a los demandantes. Y como doña Clara Álvarez o Sagastibelza otorgó derecho de servidumbre a favor de la demandada para el tendido de dichas vías, cuyo derecho fué inscrito a favor de Central Cambalache Inc., en el registro de la propiedad, es claro ¡como la luz meridiana!, que los demandantes no tienen derecho alguno para negar la servidumbre que legítimamente constituyó, a perpetuidad, la antecesora de ellos, mediante la correspondiente remuneración. El sitio por donde fueron tendidas las vías, que atraviesan la finca de doña Clara Álvarez o Sagastibelza para penetrar en la de don Sebastián Figueroa, ha sido, en el curso de los años, trasmutado. Su aspecto topográfico ha cambiado bastante. Esto pudo ser observado al efectuarse la inspección ocular. Porque para tender dichas vías, fué necesario efectuar ciertos desmontes de una loma medio circular que formaba la finca de don Sebastián Figueroa cerca del camino del 'Tanque'. Y es natural que, al verificarse dichos desmontes para construir el terraplén, aquel sitio cambiara un tanto de aspecto y de lineamientos.

"A pesar de ello, la Corte no tiene duda alguna de que la verdadera colindancia de la parcela de 3 cuerdas 70 céntimos con la de 129 cuerdas 25 céntimos es la que hemos ya indicado, o sea al Norte de los rieles."

Necesariamente, si la casa aún está situada en el lugar en que la fijaron los testigos de los demandantes y éste era realmente el lindero sur de su finca, ellos tendrían razón. Empero, esta prueba es inconsistente con las otras consideraciones en que entró la corte. Nos parecería imposible, al igual que le pareció a la corte inferior, que se describiera la finca de los demandantes como que lindaba por el oeste solamente con la propiedad de Rosso, cuando su situación real dejaría una faja de terreno bastante ancha en lindes al oeste con la finca de 208 cuerdas, que claramente pertenecía a Figueroa y más tarde a su esposa.

No estamos en absoluto convencidos de la situación exacta de la casa a que se refieren los testigos. Existe también la posibilidad de que la casa que notan ahora en el terreno quizá no sea la casa que existió en el lindero norte. Es muy fácil construir casitas en cualquier finca. Según indica el juez en su inspección ocular, todas las fincas estaban tan cubiertas de caña u otras plantas, que era difícil encontrar signos de clase alguna.

En su inspección ocular la corte no se refiere en absoluto a la existencia de esta casa situada en la finca de 129.25 cuerdas, pero los demandantes solicitaron más tarde que el acta de la inspección fuese corregida. La corte nominalmente dijo que no corregiría su acta, toda vez que tal solicitud no se había hecho antes de dictarse sentencia y que esta última debía subsistir. En otras palabras, esta enmienda fué solicitada en el momento en que las partes preparaban los autos de la apelación. La corte entonces dijo que al efectuarse la inspección ocular no se le llamó particularmente la atención hacia dicha casa y que durante el juicio no había dado a la misma importancia alguna.

Conforme hemos visto, la corte demuestra, o trata de demostrar, que el lindero sur de la finca de 37.95 cuerdas, de donde se segregó la finca de los demandantes, seguía prácticamente una línea recta que pasaba al norte de los rieles. Los demandantes contestan esto diciendo que el lindero de la finca de 37.95 cuerdas no corría en una línea enteramente recta.

No hemos entrado en un análisis más minucioso, porque nos sentimos obligados por la conclusión a que llegó la corte, y los apelantes no nos han convencido en sentido contrario.

■■ Podría decirse que el segundo señalamiento de error ha sido cubierto por las anteriores consideraciones. Se admitió un plano ofrecido por los demandantes para demostrar la situación de su finca. Sin embargo, la corte resolvió en efecto que no le merecía mucho crédito, toda vez que el plano fué preparado sólo a instancias de los demandantes, sin la intervención de la demandada; que la corte creía que

un plano así preparado no tenía mayor peso, y, necesariamente, el juez, que también había sido agrimensor, estaba en mejor posición que nosotros para juzgar los verdaderos hechos del caso. Desde luego, el plano era admisible para dar a la corte y a la demandada una idea de qué era lo que los demandantes alegaban, así como para otros fines similares.

Se señala como error el no admitir el plano demostrativo de los linderos de las 129.25 cuerdas ofrecido por los demandantes en su prueba directa. No creemos que los demandantes lo ofrecieron debidamente. Además, la corte más tarde admitió este plano como prueba de *rebuttal.*

Los demandantes dicen que si dicho plano hubiera sido admitido, ellos hubiesen ofrecido otro plano de las 208 cuerdas, que la corte más tarde se negó a admitir en la teoría de que debió ofrecerse durante el examen directo.

Creemos más bien que antes de terminarse el juicio los demandantes debieron haber presentado esta clase de argumentos a la corte y quizá ésta entonces hubiese cedido. No obstante, hemos examinado el plano de las 208 cuerdas y los demandantes no nos demuestran cómo el negarse a admitirlo perjudicó su caso. Esto cubre también el cuarto señalamiento de error.

Las otras cuestiones planteadas, a nuestro juicio, quedan suficientemente cubiertas por las siguientes consideraciones. La demandada trató de suscitar impedimentos (*estoppels*) de varias clases. Creemos, de acuerdo con la doctrina de *Torres et al.* v. *Plazuela Sugar Co.,* 24 D.P.R. 479, que se necesita mucho para impedir (*estop*) a los demandantes si éstos tienen en primera instancia un caso de negatoria de servidumbre. Cuando estos rieles fueron colocados, la Central Cambalache aparentemente estaba en posesión de todo el terreno. Ni los demandantes ni su hermano hicieron nada directamente para avenirse a que los rieles fueran tendidos, y la prueba no nos convence de que ninguno de los hermanos Colón tuviera conocimiento directo de que los rieles estaban siendo colocados por la Central sobre las 3.70 cuerdas.

En realidad, a nuestro modo de ver, la corte no se basó al dictar su sentencia en ninguna cuestión de impedimento (*estoppel*) sino que hizo comentarios de paso sobre el hecho de que los demandantes tenían conocimiento de la existencia de la servidumbre y sobre otros similares.

*La sentencia apelada debe ser confirmada.*