NICHOLSON *v.* BOARD OF MISSISSIPPI LEVEE COM'RS *et al.*

(In Banc. Jan. 12, 1948. Suggestion of Error Overruled Feb. 23, 1948.)

[33 So. (2d) 604. No. 36330.]

**Wynn, Hafter & Lake**, of Greenville, for appellant.

**Dugas Shands**, of Cleveland, and **S. B. Thomas**, of Greenville, for appellees.

**Sillers & Roberts,** of Rosedale, amici curiae.

Argued orally by **Chas. S. Tindall, Jr.,** for appellant, and by **S. B. Thomas** and **Dugas Shands,** for appellees.

**Roberds, J.,** delivered the opinion of the court.

Mrs. Nicholson filed her bill in this cause against the Board of Mississippi Levee Commissioners, with jurisdiction of river levees in Bolivar, Issaquena and Washington Counties, in this State, and against Gerard Grafton and A. P. White, seeking to remove as a cloud upon her title the claim of the Levee Commissioners to a fee simple title to the lands involved in this suit, which lands are located in said Issaquena County, and for a personal decree for the value of certain timber on said lands which

was sold by the Commissioners to Grafton and White, who cut and removed said timber. In other words, Mrs. Nicholson says she owns the fee in said lands and the Levee Board has an easement for levee purposes. The Commissioners claim the Levee Board is the fee simple owner. Defendants filed a special and a general demurrer. The chancellor overruled the special, but sustained the general, demurrer, thereby holding that the Levee Board had the fee simple title. From that decree Mrs. Nicholson appeals.

The question for decision on this appeal is the correctness of that holding as it is presented under the pleadings herein.

This necessitates a summary of the admitted facts set out in the bill, a construction of the pertinent statutes and their application to such admitted facts and to the wording of the awards condemning the lands for levee purposes, and the objects to be accomplished by the Commissioners.

The bill, after stating the claims of the respective parties to said lands, as above set out, further alleges that the lands "are wild, uncultivatable and uninhabitable due to their situation on the river side of the main line levee in said district, but that said lands are valuable for the timber growing and standing thereon and the minersals lying thereunder. The Complainant and her predecessors in title have exercised all the ownership thereof to which said lands were and are susceptible including the payment of taxes thereon for a period of many years prior to the filing of this bill of complaint." That the land had thereon, prior to the removal thereof, valuable timber, consisting of cottonwood, gum, oak, and willow; that she requested the Commissioners to permit her to cut and remove the timber in such manner and at such time as not to interfere in any way with the right of the Commissioners to use the lands for levee purposes, which requests was denied, and that said Commissioners thereafter sold to Grafton and White the pulpwood for

$1.25 per cord and all the other timber above twelve inches in diameter for $15.00 per thousand feet, and that said purchasers were in the act of cutting and removing the purchased timber when the bill was filed; that theretofore the main line of levee had been transferred by such Commissioners to the United States Government and placed under the jurisdiction of the Mississippi River Commission and the Engineers of the United States Army; "that no material other than dirt or soil is necessary or proper to be used in the building, enlargment or repairing of said levee, and that the placing of timber, logs or other materials, except dirt or soil on the levee is prohibited by the United States Government and the Defendant Levee Board in all specifications prepared and used by each of them"; that the cordwood and timber on said lands are not used or needed for the construction, maintenance or repair of the levees, nor need the same be cut and removed to aid in levee construction or maintenance. The demurrer admits the stated facts but not the conclusions. All title of the Levee Board was acquired by condemnation proceedings. The awards are exhibited as a part of the bill, there being twenty-two in number. There were no agreements with, or deeds by, the owners. Mrs. Nicholson was either the owner at the time of the condemnation or is the grantee of such owners.

We now set out the applicable statutes:

Chapter 1, Laws 1865, created into a corporate body "The Board of Levee Commissioners of the Counties of Bolivar, Washington and Issaquena," naming and appointing as commissioners two residents of each county. Section 3 imposed upon the commissioners the duty, and conferred upon them the power, to ". . . rebuild, strengthen or elevate the old levee, or make new embankments or levees, when they may regard such to be necessary . . . " in said three counties, upon the Mississippi River front, or such other places as the Board might decide; determine the base, height, slope and elevation

of levees; abandon or repair old levees and build new ones "on such ground as they may select," and do all acts necessary to protect said counties from the overflow of said River.

Section 17 of the said Act provided that if any owners of land ". . . shall object to the location or building of the levee on their lands" the Levee Board or landowner, by proper petition, could have a jury of freeholders or householders of the county ascertain the damages sustained and the compensation to which such owner is entitled, the verdict to be in writing and to be final.

Section 17 was first amended by Section 2, Chapter 276, Laws 1882, but the amendment does not bear on the question under consideration.

Said Section 17 was next amended by Section 3, Chapter 169, Laws 1884. That Act authorizes and directs the circuit judge of the district in which said three counties are located to appoint "Commissioners to assess levee damages" if the landowner objects to the building of the levee on his land. The Commissioners take an oath that they will make a "just and true award of the compensation to be paid any land-holder or land-holders or other person by reason of the appropriation of their property for the purpose of building, repairing or maintaining the public levee," and in making up their award shall ascertain and determine the value of the "land or material occupied or used . . . for the right of way of said levee or for other levee purposes, and also the damages caused to the owner's adjacent property by reason of the use of his land or other property for right of way for said levee or for other levee purposes." Upon payment or tender of the award the Commissioners may proceed "to locate and build the levee or use the property condemned. . . . The remedy hereby provided for determining the compensation and damages to be paid for the right of way and for the use of material and other property for the levees . . . " may be resorted to either by

the Commissioner or any interested person. The Board may do so when it deems necessary to "take and use any right of way, land, material or other property for levee purposes . . . ," the petition "describing as nearly as may be the property taken or proposed to be taken". This section authorizes the Commissioners to compromise or agree with the owners upon the damage or compensation "on account of rights of way or material for the construction, maintenance or repair of levees," and, lastly, the Commissioners are authorized to "enter upon, take, use and appropriate any property in said levee district, for the purpose of constructing, maintaining and repairing its said levee, in accordance with the provisions of this section . . . ."

Section 232, Mississippi Constitution 1890, conferred on the Commissioners the power of ". . . erection, repair and maintenance . . . " of levees in the district, and "shall have power to cede all their rights of way and levees and the maintenance, management and control thereof to the government of the United States."

Section 233 of said Constitution granted the Board "authority and full power to appropriate private property . . . " in the district ". . . for the purpose of constructing, maintaining, and repairing levees therein . . . ," and if "any owner of land, or any other person interested therein, shall object to the location or building of the levee thereon, or shall claim compensation for any land that may be taken, or for any damages he may sustain in consequence thereof . . . ," the Board, or any landowner, may have the damages determined under the procedure prescribed in Section 17, Laws of 1865, as amend by the Act of 1884 above set out.

Chapter 92, Laws 1904, amended the Act of 1865 and 1884, and conferred upon the circuit judge power to appoint "commissioners to assess levee damages," such commissioners to take an oath to make a just and true award to the owners "by reason of the appropriation of their property for the purpose of building, repairing, or

maintaining the public levee.'' The commissioners are required to determine the cash value of the land or material ''occupied or used, for the right of way for said levee or for other levee purposes,'' and the damage caused to the owner's adjacent land ''by reason of the use of his land or other property for right of way for said levee or for other levee purposes.'' That statute further enacts that ''The remedy hereby provided for determining the compensation and damages to be paid for the right of way and for the use of material and other property for the levees . . . '' may be resorted to by the Board or the land owner and the remedy is exclusive, and ''When said levee board deems it necessary to take and use any right of way, land, material or other property for levee purposes . . . '' the Board shall file the proper petition to have the damages ascertained. The Board is granted authority to settle or compromise claims for compensation or damages ''. . . on account of the rights of way or material for the construction, maintenance or repair of levees.''

As we understand the situation, all the land is located between the present levee and the Mississippi River, and that strip varies considerably in width. The awards range in time from 1899 to 1939. All of the awards prior to 1904, and one in the year 1904, and one each in 1915, 1925, 1929, and 1939, recite that the Levee Commissioners have deemed it necessary to build and maintain, or repair, a levee ''running through the following lands,'' followed by a metes and bounds description of the entire strip. Some of these recite the levee has already been ''located on . . . said land . . . And we do now ascertain and determine the cash value of the land taken for the right of way occupied by said levee, and the barrow pits used in the construction (and maintenance) of said levee,'' and the damage caused to the adjacent property of said owner, to be the amounts then set out. The other awards recite, in this respect, that the Commissioners ''have deemed it necessary to take the following

strip of land to build, enlarge and repair the levee . . . ''; that the commissioners had gone on the land and had determine a stated consideration ''for the land taken in the building, repairing, enlarging and right of way and other damages as shown in locating . . . ,'' etc., the levee. Some of the awards, in describing the property for which the consideration was paid, say ''cleared land in right of way,'' so much per acre, and ''woodland in right of way,'' a certain price; others say ''land taken'' so much per acre. All of the older awards expressly state they were made under the Act of 1865 as amended by the Act of 1884; and later awards say that also and add as amended by the Act of 1904, all above set out herein.

There are certain well settled legal rules applicable to the foregoing situation.

One of these is that the power of eminent domain is in derogation of the common law and should be construed favorably to the owner and against the condemnor. Wise v. Yazoo City, 96 Miss. 507, 51 So. 453, 26 L. R. A. (N. S.) 1130, Ann. Cas. 1912B, 377; 30 C. J. S., Eminent Domain, Sec. 449. And this rule applies to the quantum of interest to be taken as well as to the extent of the power vested in condemnor. 30 C. J. S., supra; Warm Springs Irrigation Dist. v. Pacific Live Stock Co., 9 Cir., 270 F. 560.

The Legislature has the power to define the quantum of interest or estate which may be taken, whether an easement or the fee or some estate intermediate these two. The power is limited to the express terms or clear implication of the statute. If the statute does not define the quantum of the estate to be taken, no greater estate can be taken than the particular public use requires. The general rule, in this respect, is stated in 18 Am. Jur., pg. 741, Sec. 115, in these words:

''In the absence of any definition of the estate which the grantee of the power is authorized to acquire or any limitations in the granting statute, no more property can be taken than the public use requires; this rule applies

both to the amount of property and the estate or interest in such property to be acquired by the public. Furthermore, it is universally recognized that a grant of the power of eminent domain will not be extended by implication, and that when an easement will satisfy the purpose of the grant, the power to condemn the fee will not be included in the grant unless it is expressly provided. Accordingly it is well settled that when land is taken for the public use, unless the fee is necessary for the purposes for which the land is taken . . . the public acquires only an easement. The public easement, or servitude as it is sometimes called, in such a case extends to all uses directly or incidentally conducive to the advancement of the purpose for which the land was acquired, and to no others; and the owner retains the title to the land in fee and the right to make any use of it that does not interfere with the full and free exercise of the public easement.''

If the Commissioners are vested with the fee, the statutes, or constitution, must have vested such power expressly or by necessary implication, and the awards must have condemned that quantum of estate. The statutes do not expressly confer such power. The word ''fee'' is not used. Nor is any similar word of like meaning used. At most the statutes, and Section 233 of the Constitution, only confer, in express terms, the power to take property to construct, reconstruct, repair and maintain levees. However, the Levee Board takes issue on that conclusion. It says the power to take land is expressly granted and that *land*, in its ordinary common law meaning, embraces not only the soil but its natural produce growing thereon and affixed thereto and all natural minerals and substances in place underneath the surface; citing Harrell v. Miller, 35 Miss. 700, 72 Am. Dec. 154, and Whelan v. Johnston, 192 Miss. 673, 6 So. (2d) 300. That, of course, is one meaning of the word, but it has a two-fold meaning, depending on the context and circumstances used—in its most general sense it comprehends

"any ground, soil, or earth whatsoever . . . ," but in a limited sense it "denotes the quantity and character of the interest or estate which the tenant may own in the land . . . " Johnson v. Richardson, 33 Miss. 462. In other words, it may describe an easement as well as a fee simple title. All parts of the statute, or instrument, must be construed together and as a whole, and such construction may show the word is used in its limited sense. Gulf Refining Co. of Louisiana v. Terry, 163 Miss. 869, 142 So. 457. It is noted the word *land* does not appear in that part of the statutes or Constitution vesting power in the commissioners. That part empowers them to appropriate private property to construct, maintain and repair levees. The word *land* is in that part conferring upon the owner the right to compensation for what may be taken. We do not think the word as thus used describes the quantum of the estate to be taken.

Appellee urges also that the use of the word "appropriate" expressly confers the power to acquire a fee simple title; that the word embraces the power, or right, to take as one's own by exclusive right. United States v. Nicholson, D. C., 12 F. 522; Newhouse v. First Nat. Bank of Chicago, D. C., 13 F. (2d) 887. Appellant replies that the word has a varying meaning; that the same word is used in Section 2762, Code 1942, a part of the general eminent domain chapter, and that in many cases under that statute this Court has held that the power conferred is only to acquire an easement. The word denotes the act of acquiring, or taking a thing, but does not describe the thing to be taken or appropriated. The quantum of estate is not defined in the statutes or the Constitution, but, on the other hand, they frequently use the word right of way and refer to its being located upon the land of the owner. We must conclude there is no express power to condemn the fee.

But appellee Board contends that if such power be not expressly conferred, then it is impliedly vested. It says such power is essential to the performance of the imposed

duties. Reference is made to the enormity of the task of controlling the waters of the Mississippi River and the vagaries of that stream; that its basin covers some 59,000 square miles, through which flows the waters of two Provinces of Canada and thirty-one States of this Union, and that there are 170 miles of levee in this district; that it is common knowledge that overflows from this River have resulted in untold property damage and great loss of life in the past, and may do so in the future. The argument is persuasive. However, it is not demonstrated in just what manner, or particular respect, the Commissioners are hampered in the full performance of their duties by having only an easement. It is conceded the Commissioners have full power to use the lands in question to reconstruct, re-locate, repair, alter or change the existing levees, and build new levees, and the owner has no right to obstruct or interfere in the least with complete performance of the duties of the Commissioners. Indeed, the bill states and the demurrer admits that the timber which is the subject of this controversy, is not needed or useful in the construction or repair or maintenance of levees, but on the other hand, the regulations of the United States Engineers, who now have directive control, prohibit the use of wood for such purposes. Too, the action of the Commissioners in selling the timber to third parties is evidence it is not needed, or suitable, in the construction, repair or maintenance òf the levees, and that its removal does not interfere with the duties of the Commissioners. The Commissioners have converted the timber into money—not into levees. Furthermore, appellant's request to the Commissioners to remove the timber was grounded on the condition it would be removed at such time and in such manner as not to disturb in any way the efficiency of the levees or interfere with the duties of the Commissioners.

Again, appellee says that, regardless of the wording of prior statutes, Section 233 of the Constitution dealt with this district and the Yazoo-Mississippi Levee District

(the only two districts then in existence) in the same words, as to vesting power, and that unquestionably the Commissioners of the Yazoo District have the power to acquire fee simple title. We agree the Yazoo Commissioners appear to have that power, but we call attention to the fact that, while the first part of Section 233 refers alike to the two districts, that this section expressly embodies into itself the existing power and methods of the two districts to condemn land—as to the Mississippi District the power and method prescribed in Section 17, Chapter 1, Laws 1865, amended by Section 3, Chapter 169, Laws 1884, above summarized in this opinion, and as to the Yazoo District in accordance with Section 3 of Chapter 168, Laws 1884. This makes it necessary to point out the distinctions in the power and method of condemning property provided in the respective Acts. We have already noted that Section 17, Chapter 169, Laws 1884, as well as Chapter 92, Laws 1904, amending the 1884 enactment controlling the Mississippi Levee District, authorize the commissioners to determine the cash value of the land, or other material, "for the right of way for said levee," and that no words expressly empower the taking of the fee. On the other hand, Section 3, Chapter 168, Laws 1884, creating the Yazoo District, empowered the Board to acquire any "land" or "premises whatever" by agreement or condemnation, with "full title" thereto, and if the owner possesses less than a "fee simple" title, the Levee Board can take that. Chapter 85, Laws 1894, amended said Chapter 168 and provided the same procedure for both districts, but Chapter 157, Laws 1896, repealed said Chapter 85 and re-enacted Chapter 168. Chapter 19, Laws 1897, repealed Section 3, Chapter 168, Laws 1884, and Chapter 85, Laws 1894, and Chapter 157, Laws 1896, and empowered the Commissioners of the Yazoo District to acquire "absolute title" to the property condemned, and upon payment of the award the title ". . . shall vest absolutely in the board of levee commissioners . . . " Thus it is seen that a

vital distinction exists in the powers of the commissioners in the two districts—the one (here involved) having the power or take property "for the right of way of said levee," the other the power to take the "full title," the "absolute title," and if the owner has less than a fee simple title the commissioners can take such title as the owner has, inferentially, at least, empowering the commissioners to take the fee if the owner has the fee. Why the Legislature made this vital distinction is not for us to say. The fact is it did do that and we must assume it did so knowingly and intentionally. Had it been the intention to vest the same powers in the two districts it would have been a simple matter to have said so rather than adopt the more troublesome method of expressly adopting vitally different methods and vesting different powers.

There appears to be no case in Mississippi exactly in point. Appellee says that Board of Mississippi Levee Commissioners v. Johnson, 66 Miss. 248, 6 So. 199, is controlling in its favor. That case involved the apportionment of damages between landlord and tenant where the growing crops of the tenant were taken and destroyed as a result of the condemnation. The tenant was not a party to the condemnation proceeding, the commissioners not knowing there was a tenant, and the value of the crop was paid the landowner. The tenant then sued for value of the crops. A number of collateral questions were involved but the extent of the estate acquired by the commissioners in the land was not involved. Naturally the crops would have been destroyed by the exercise of the easement.

We do not think the Commissioners of this district were vested with the implied power to condemn a fee simple title, but, even if there be a reasonable doubt on that question, it is our duty, under the universal rule of law in such cases, to resolve that doubt in favor of the landowner.

Lastly, it is urged by appellees that the owners were: paid for the value of the fee simple estates. That fact, if it is a fact, must be gathered from the awards. We have already observed that several of the awards recite the commissioners have deemed it necessary to build a levee "running through the following lands . . . " and then describe, by metes and bounds, the strip sought to be condemned, and that the Commissioners have gone upon the "ground and viewed the same" and find that the levee "as located and built on said land," or to be located and built thereon, is so long and so wide, including the barrow pits. "And we do now ascertain and determine the cash value of the land taken for the right of way occupied by the levee and barrow pits . . . " to be of a named amount. They then fix the price per acre for the wooded land, cultivated land, etc., and the damage to other property, such as fences or adjoining lands of the condemnee. They recite then "We therefore assess and award as damages for the location, construction, right of way and other damages as shown in locating and constructing said levees . . . " The wording is not the same but that is the substances of all the awards heretofore mentioned in this paragraph. Sixteen of the twenty-two awards are on printed forms presumably prepared by the Levee Commissioners. Each and all of these recite, "We therefore assess and award damages for the land taken in the building, repairing, enlarging and right of way and other damages as shown in locating and constructing or repairing said levee . . . " to the owner a certain amount of money. The other forms, not printed, all use the expression "for the right of way occupied by said levee . . . ," including the barrow pits. While all awards place the value at so much per acre, the thing paid for by the acre is the estate shown to be acquired by a consideration of the entire awards and that thing is the right to locate, relocate, construct, change, repair and maintain the levees. We do not think the awards prove the Commissioners paid for the fee

simple title. It might be added that, at the time these awards were made, the damage to the owner, in practical effect, was approximately the same whether the fee or an easement was taken.

It will be borne in mind that the land here involved lies between the levees and the river, in most instances a considerable area; that appellant all along has paid taxes thereon; that the exercise by the fee simple owner of his rights shall not interfere in any manner with the full performance of the powers and duties of the Commissioners; that the Commissioners have full and ample interest in the land to completely perform their duties and powers, and that the timber, the subject of this litigation, is not needed or usable in the accomplishment of the objects for which the district was created. It follows that the timber in question was the property of appellant. Campbell v. Covington County, 161 Miss. 374, 137 So. 111.

Reversed and remanded.