### POST et al. v. SUFFOLK LIGHT, HEAT & POWER CO.

(Supreme Court, Special Term, Kings County.  July, 1912.)

1. HIGHWAYS (§ 155*)—USE—INJUNCTION—PARTIES.

An action to enjoin an electric company from erecting its line upon a highway cannot be maintained by one who owns no land abutting the highway.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 432–436; Dec. Dig. § 155.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. Parties (§ 86*)—Plaintiffs—Improper Joinder—Effect.**

Where several parties join as plaintiffs in an action to enjoin the erection of poles and electric wires upon a highway, the fact that one plaintiff has no right to maintain the action will not affect the standing of the others.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 143; Dec. Dig. § 86.*]

**3. Electricity (§ 6*)—Use—Rights of Abutting Owners.**

Where the title to a highway is in the abutting owners subject to the easement of the public, and an electric company, without having procured a right to do so from such owners, either by grant or condemnation, erects its poles and wires conveying current to a more distant point and not for lighting the highway, the company's act is an invasion of the rights of such owners.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 6.*]

**4. Electricity (§ 6*)—Use—Injunction—Abutting Owners.**

An abutting owner, who also owns the bed of the street, may enjoin its use for any purpose inconsistent with those uses to which streets are ordinarily subjected.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 6.*]

**5. Eminent Domain (§ 100*)—Compensation—Use of Streets—Rights of Abutting Owners.**

While electric light poles may be erected upon a street for use in lighting it, they cannot be erected there for the accommodation of citizens desiring electricity in their residences without compensation to abutting owners.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 256–264, 267; Dec. Dig. § 100.*]

Action by Erastus F. Post, and others, against the Suffolk Light, Heat & Power Company. Motion to continue temporary injunction granted.

Reeves & Todd, for plaintiffs.
Timothy A. Leary, for defendant.

BENEDICT, J. This is an application for an injunction pendente lite, arising upon an order to show cause granted by Mr. Justice Blackmar, which order to show cause contained a preliminary injunction whereby the defendant, Suffolk Light, Heat & Power Company, its agents, employés, and attorneys, were enjoined and restrained from erecting any poles or cross-arms on any poles, and from the suspension of any electric wires on any poles within the hamlet of Quogue, in the town of Southampton, in the county of Suffolk.

[1, 2] The action is brought by four plaintiffs, suing on behalf of themselves and all others similarly situated. It appears from the moving affidavits that the plaintiffs Erastus F. Post, Abram S. Post, and Henry Gardiner are the owners of property abutting upon the highway known as Quogue street, or Main Quogue Road, and are the owners of the bed of the street to the center line thereof in fee. It does not, however, appear from the moving papers what the interest of the plaintiff David C. Townsend is, nor whether he owns any land

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

abutting upon this highway. Unless he be the owner of such land, he could have no standing to maintain this action, and as to him the complaint would necessarily have to be dismissed upon the trial. This, however, does not in any way affect the standing of the other plaintiffs.

[3] It appears from the complaint and moving affidavits that the defendant is a domestic corporation, having its principal place of business in the village of Southampton, and that it has a franchise from the authorities of the town of Southampton for the lighting of streets in the village of Southampton, and that it is its purpose and desire to extend its electric lighting system to the west of the village of Southampton—that is, to Shinnecock Hills, Good Ground, East Quogue, Quogue, Westhampton, Westhampton Beach, Remsenburg, and Speonk, all of which are hamlets or villages located along the South Country Road on the south shore of Long Island, in the town of Southampton— and that it is now supplying the streets and highways of Good Ground and East Quogue under a contract with the town of Southampton for street lighting, in those places. It also appears that the district west of Westhampton is being temporarily supplied with electric lighting current for the defendant by the Riverhead Electric Light Company, situated in the town of Riverhead, and that the last-mentioned company has a contract with the town board of the town of Southampton for lighting the streets of Westhampton Beach; and it further appears that on or about the 1st day of June, 1912, the defendant entered into an agreement with the Riverhead Electric Light Company, whereby it agreed to purchase from the Riverhead Electric Light Company all its rights, contracts, franchises, and property within the district of Westhampton and Westhampton Beach. The evident intention of the defendant is to connect Westhampton and Westhampton Beach, under its recently acquired rights from the Riverhead Electric Light Company, with its own station in the village of Southampton, and in order to accomplish this result it is necessary for it to extend its system westwardly from East Quogue to Westhampton and Westhampton Beach, either through or around the hamlet of Quogue, and in order to make this extension it now proposes to erect electric light poles and lines through the hamlet of Quogue, and, more specifically, through the said street known as Quogue street or the Main Quogue Road, in front of the property owned by the plaintiffs Post and Gardiner above named. It further appears that it has not acquired, by grant or otherwise, from these plaintiffs, any right to erect poles in front of the plaintiffs' property abutting on the said highway, title to which is vested in such plaintiffs in fee, subject to the easement of the public to use the street for highway purposes; nor has it taken any proceedings under the right of eminent domain to acquire such a right.

[4] Whatever may be said as to the right of an abutter—that is, one who owns only to the margin of the street—to bring an action to enjoin an encroachment upon a street for purposes inconsistent with those uses to which streets have ordinarily been subjected, it is perfectly clear that an abutting owner, who also has the ownership of the

bed of the highway, has the right to maintain such action. This proposition is well stated by Judge Gray in City of Buffalo v. Pratt et al., 131 N. Y. 293, 298, 30 N. E. 233, 234 (15 L. R. A. 413, 27 Am. St. Rep. 592). He says:

"I do not think that it is needed, or that it would be profitable, to review the many cases in which the rights of owners of property in and abutting upon the street have been considered. The result has been to generally define and assign their particular interests and rights. The mere abutter, with no ownership in the bed of the street, is entitled to protection against an interference with certain easements in the street. They constitute property, of which neither Legislature, nor municipality, can deprive him without compensation. Kane v. N. Y. Elev. R. R. Co., 125 N. Y. 164 [26 N. E. 278, 11 L. R. A. 640].

"It is unquestionable, however, that the ownership of the fee of the land in a street has a substantial value to the abutting property holder, in the degree of control it gives to him over the uses to which the street may be put. It vests him with the right to defend against and to enjoin a use of, or an encroachment upon, the street, under legislative or municipal authority, for purposes inconsistent with those uses to which streets should be, or have been ordinarily subjected; unless just compensation is provided to be made. His ownership of the land in the street was subject only to the public easement therein as a highway. In the absence of such a provision for compensation, the taking of the street for some new or additional and inconsistent use would be illegal. But, if the abutting property owner does not own the fee in the land of his street, he has no such right to compensation, and is remediless against a taking of the street under legislative or municipal sanction for other uses; except such other uses be unreasonable and, in their nature, so improper as to obstruct a free passage upon the street, or to amount to a nuisance; or to deprive him of the enjoyment of easements of light, air, and access. As to any such improper or unreasonable use of a street, the abutting property owner would undoubtedly have the right to come into a court of equity and to claim its intervention to protect his general rights."

[5] Neither upon the argument nor in the papers submitted on behalf of the defendant is it claimed that the purpose for which the defendant desires to erect its poles and wires along the said street, Quogue street or Main Quogue Road, is for the purpose of lighting the said street itself; but that its chief desire is to enable it to light the streets of Westhampton and Westhampton Beach under the aforesaid contract with the town of Southampton. It may, and doubtless would, be incidentally advantageous to some of the owners or residents of property situated in the hamlet of Quogue to be able to obtain electric lighting facilities by the installation of the defendant's proposed line through that hamlet; but such purpose is, I think, clearly shown by the affidavits submitted, to be only incidental, and that the defendant's primary object is to reach Westhampton and Westhampton Beach as above stated, and therefore, even if it could be shown that many of such residents and property owners in Quogue desired to be supplied with such light, that fact would not be controlling if such desire would result in an invasion of the plaintiffs' property rights without compensation.

Among the eighteen affidavits furnished by the defendant from property owners or residents in Quogue, there is only one which contains the statement that the deponent owns property along the line of the Main Quogue Road, and in six cases the deponents have carefully eliminated the statement in the typewritten form that the poles,

cross-arms, and wires, proposed to be erected by the defendant, are neither unsightly nor a disfigurement to the property abutting on the roads and highways.

It is too clear to admit of argument that the placing of electric light poles in the highway would create an additional burden upon the highway. Such a burden may, however, be placed upon the highway under the authorities, if the burden is for a *street use,* but not for a mere *public* or *municipal* use; and such additional burden cannot be placed upon the highway either by the Legislature or by any local authority, except for a street use, without making compensation therefor to the owners of the property abutting upon such highway. Williams v. New York Central R. R. Co., 16 N. Y. 97, 69 Am. Dec. 651; Craig v. Rochester City & B. R. R. R., 39 N. Y. 404. Fobes v. R. W. & O. R. R. Co., 121 N. Y. 505, 24 N. E. 919, 8 L. R. A. 453; Eels v. American T. & T. Co., 143 N. Y. 133, 38 N. E. 202, 25 L. R. A. 640; Palmer v. Larchmont Elec. Co., 158 N. Y. 231, 52 N. E. 1092, 43 L. R. A. 672; Osborne v. Auburn Telephone Co., 189 N. Y. 393, 82 N. E. 428. And also Matter of the Board of Rapid Transit Commissioners, 197 N. Y. 81, 90 N. E. 456, 36 L. R. A. (N. S.) 647, 18 Ann. Cas. 366.

In Palmer v. Larchmont Elec. Co., 158 N. Y. 231, 52 N. E. 1092, 43 L. R. A. 672, Judge Haight says, in discussing the distinction between street uses and municipal uses:

"But there is a broad distinction between a municipal purpose and a street purpose. The primary object of highways is for public travel by persons and animals and by carriages and vehicles used for the purpose of transportation and goods other than by railroads. Sewers drain the surface waters from highways, and thus relieve them from impairment and destruction. In this respect sewers are for a street purpose. In addition, they may drain also the abutting property and houses, and this is done to promote the public health. In this respect they are for a municipal purpose. Water supply by mains through the highways may be used for cleansing or sprinkling the streets. In this respect it is for a street purpose. It may be used by the abutting owners for cleansing and for domestic purposes, and is also used for the extinguishment of fires. In this respect it is for a municipal purpose. Light is, as we have seen, an aid to the public in the nighttime in traveling upon the highway; it is therefore used for a street purpose. All of the street purposes which we have referred to are clearly incident to the highway, and are deemed within the grant of lands for highway purposes whenever the necessity for these uses arises."

In Osborne v. Auburn Telephone Co., 189 N. Y. 393, 397, 82 N. E. 428, 429, the Court of Appeals adopted the language of Judge Haight in the Palmer Case, and, as a result, in that case held that the use of a street for municipal purposes or individual purposes, independent of its use for street purposes, is an additional burden upon the fee not included in the grant of lands for highway purposes. They say:

"We are aware that in recent years our highways and streets have been appropriated for municipal and individual uses in many instances; subways, conduits, and pipe lines have been constructed for the transmission of electricity, steam, or other products for other than street purposes. Cities which own the fee in the streets may contract, lease, or grant their use for public or municipal purposes, not inconsistent with, nor prejudicial to, the public easement or use for street purposes. In such cases, the fee having been transferred to the municipality, it can grant rights in the streets other than

for *street* purposes which do not impair the public easement. We therefore cannot recognize the uses to which highways have been subjected in recent years as changing the law or the property rights of individuals."

I think that the case of Palmer v. Larchmont Electric Company, supra, is decisive of the question here involved. To quote again from Judge Haight's opinion:

"The defendant is an electric corporation organized under the Transportation Corporations Law of this state (L. 1890, c. 566), having for its objects the manufacture and use of electricity, for producing light, heat, or power, and in lighting streets, avenues, public parks, and places, and public and private buildings of cities, villages, and towns within this state. On the 14th day of March, 1894, it obtained a grant from the town board of the town of Mamaroneck, giving it the right to construct and maintain suitable lines of wire for the purpose of conducting electricity to such points within the corporate limits of the town as may seem fit to the company, subject, however, to certain rules and restrictions specifically mentioned. * * * Pursuant to this grant the town contracted for certain lights at the rate of $22.50 per light per year, and thereupon, pursuant to the grant and contract, the defendant constructed its line of wire through Rushmore and Palmer avenues, locating a light on the corner of those avenues in front of plaintiff's premises, and erected on Palmer avenue, in front of his premises, two poles on which the wires were strung, and which the evidence shows were necessary to enable the company to perform its contract with the town. This action was prosecuted to recover the possession of the lands occupied by these poles and for damages.

"The care, management, and control of the public ways devolve upon the local municipal government in which they are located, and it is the duty of the local government to maintain them in such condition that the public, by the exercise of due care, may pass over them in safety. In the darkness of the night, in crowded thoroughfares, light is an important aid, largely tending to promote the convenience, as well as the safety, of the traveling public. It is not only one of the uses to which the public ways may be devoted, but in the case of crowded thoroughfares a duty devolves upon the municipality of supplying it. In such cases it is one of the burdens upon the fee which must be borne as an incident to the public right of traveling over the way, and is deemed one of the uses for which the land was taken as a public highway. Johnson v. Thomson-Houston El. Co., 54 Hun, 469 [7 N. Y. Supp. 716]; Consumers' Gas & El. L. Co. v. Congress Spring Co., 61 Hun, 133 [15 N. Y. Supp. 624]; Witcher v. Holland Waterworks Co., 66 Hun, 619 [20 N. Y. Supp. 560]; s. c., affirmed 142 N. Y. 626 [37 N. E. 565]; Hequembourg v. City of Dunkirk, 49 Hun, 550 [2 N. Y. Supp. 447] Sun Pub. Ass'n v. Mayor, etc., 152 N. Y. 257, 265 [46 N. E. 499, 37 L. R. A. 788]; Van Brunt v. Town of Flatbush, 128 N. Y. 50, 56 [27 N. E. 973]. * * *

"It may be that the owners of the fee in highways should not be burdened with sewers, conductors, or wires, in which they have no interest or right to use, but which are intended for the use of other localities; *but sewers, conductors, and lighting wires intended for the use, benefit, and improvement of the highway through which they pass*, and of the abutting owners thereon, which promote the comfort and safety of the traveling public, stand upon a different footing and impose no burden upon the fee not intended by the grant for highway purposes."

See, also, Metropolitan, etc., Co. v. Colwell, 50 N. Y. Super. Ct. 488.

As I have shown, the object of the defendant corporation in the present case is not one connected with and incidental to the lighting of this street in Quogue, but it is to carry its electric current through Quogue until it shall reach Westhampton and Westhampton Beach. This is an additional burden without corresponding benefit to the plaintiffs, because this particular road is already lighted by a local gas

company with a franchise from the town of Southampton which still has several years to run.

If it is of great consequence to the defendant corporation to erect its poles through the hamlet of Quogue, the courts are open to it to acquire by condemnation proceedings, upon making just compensation to the abutting owners for the additional burden imposed, a right of way. Or if that method be felt to be too burdensome, it can doubtless go *around,* and not *through,* the hamlet of Quogue.

In my opinion the plaintiffs who are the owners of the bed of the highway have brought themselves within the rule laid down by these cases, and the temporary injunction should be continued until the trial of this action.

Motion granted, with costs.