BERRY *v.* SOUTHERN PINE ELECTRIC POWER ASSN., et al.

No. 39307 November 22, 1954 76 So. 2d 212

*Dale & Wilson,* Prentiss, for appellant.

*Evon A. Ford,* Taylorsville; *Hugh McIntosh,* Collins, for appellees.

McGEHEE, C. J.

It is sought in this suit of the appellant H. L. Berry to recover damages, both actual and punitive, from the appellee Southern Pine Electric Power Association, and to obtain a mandatory injunction so as to require such Electric Power Association to remove certain poles and electric power lines from a right-of-way sold and conveyed by the appellant and his wife for highway purposes to the appellee Mississippi State Highway Commission, on March 13, 1939. The proof disclosed that the poles and electric power lines were placed on the highway right-of-way during the latter part of the year 1951 over the written protest of the appellant as abutting landowner but in reliance upon a written permit from the State Highway Commission.

The bill of complaint alleges that the right-of-way conveyed to the appellee Mississippi State Highway Commission by the appellant and his wife consisted of "a strip of land 100 feet in width, extending through, over, on and across" the lands of the appellant consisting of approximately 86 acres, and was for "a proposed highway as now surveyed and shown by the plans of said highway on file in the office of the State Highway Department at Jackson, Mississippi, and known as State Project No. 13-1500-C (1)" between the towns of Prentiss in Jefferson Davis County and Mendenhall in Simpson County, Mississippi. The proposed highway is

what is now known as State Highway No. 13, which runs in a general north and south direction and passes through the Gwinville Gas Field and the village of Gwinville, Mississippi, in Jefferson Davis County.

The remaining lands of the appellant H. L. Berry have a frontage of approximately one-quarter of a mile on the east side of this paved highway. Directly across the highway from Berry's land there are located 12 or 13 nice residences facing to the east on the highway, together with the gas plant of the Southern Natural Gas Company where approximately 150 men are employed. There is a postoffice and store in the village, and the proof discloses without dispute that the property of Berry along the highway is as suitable for residential purposes as is the land across the highway and in front thereof, unless made less so because the appellee Electric Power Association has its poles and high voltage power lines on the east side of the highway right-of-way, and along in front of the Berry property. He testified that these high powered transmission lines being strung on poles about 25 feet high were considered dangerous in that they may fall or be blown down, and that as now located they would interfere with television and radio reception, and with the result that the fair cash market value of his land was reduced from $12,000.00 to $10,-000.00 by reason of the location of the said high-powered lines between his one-quarter mile frontage on the highway and the paved portion thereof.

The appellant introduced a local citizen who claimed to be familiar with the fair cash market value of the land before and after this additional burden or servitude was imposed by the construction of this high-powered electric wire; this witness thought that the residential sites of Berry's property fronting the highway were rendered at least $100.00 less valuable per lot by reason of the presence of the electric power line.

One witness for the defense, who lived about 15 miles from the land, expressed the opinion that Berry's prop-

erty was not damaged by reason of. the presence of these electric power lines. There were four of these lines, three of which carried 13,000 volts.

The trial judge rendered no express finding of fact on the conflict in the testimony as to whether or not the Berry property had been damaged, and since it is manifest from the great weight of the testimony that actual damage to the market value of the abutting property was shown we conclude that the decree dismissing the bill of complaint with prejudice was based upon the contention of the defendants that the complainant was without remedy even though the market value of his property may have been substantially reduced by reason of the location of the electric power line on the highway right-of-way, upon the theory that the appellee Electric Power Association was authorized and empowered by statute to place its electric power line on the highway subject only to the approval of the State Highway Commission and without regard to any objection on the part of the abutting landowner.

Section 17 of the State Constitution of 1890 provides, among other things, that: "Private property shall not be taken or damaged for public use, except on due compensation * * * made to the owner or owners thereof, in a manner to be prescribed by law * * *."

This Court held in the cases of Parker v. State Highway Commission, 173 Miss. 213, 162 So. 162, and in State Highway Commission v. Mason, 192 Miss. 576, 4 So. 2d 345, 6 So. 2d 468, that Section 17 of our State Constitution is self-executing. The Court had theretofore held in the case of Hill v. Woodward, 100 Miss. 879, 57 So. 294, that a guarantee in the constitution can not be overridden by the public policy of the State.

The Legislature has declared, with full authority so to do, a public policy of encouraging the development of the oil and gas and electric power industries in this State by giving them the right to build or construct pipe

lines and electric power lines "along or across high-ways, * * * , and public lands * * *." The Legislature has authorized this to be done without regard to whether a landowner may be damaged thereby, and without regard to whether the landowner consents thereto or not. This, too, was a legitimate exercise of the legislative power, but as we held in the case of Willmut Gas & Oil Co. v. Covington County, 221 Miss. ____, 71 So. 2d 184, "we cannot assume that the Legislature intended by the enactment of Section 2780 (Code of 1942) to violate the constitution. On the contrary, the presumption is that that body intended to comply with the organic law, and the statute should be given a reasonable interpretation which is consistent with that presumed intent and which would permit the upholding of the Act."

 Section 2780, Code of 1942, as amended, which found its origin in Chapter 291, Laws of 1922, provides among other things as follows:

"All companies or associations of persons, incorporated or organized, for the purpose of building or constructing pipe lines and appliances for the conveying and distribution of oil or gas or for the purpose of constructing, maintaining and operating lines for transmitting electricity for lighting, heating and power purposes, are hereby empowered to exercise the right of eminent domain in the manner now provided by law, to build and construct the said pipe lines and appliances along or across highways, * * * and public lands. * * * all such companies or associations shall be responsible in damages for any injuries caused by such construction or use thereof."

Chapter 291, Laws of 1922, contains the provision last above quoted and has been brought forward as Section 2780, Code of 1942, as amended. This is one of the statutes relied upon by the appellee Electric Power Association as a defense to liability in the case at bar; and it is argued that when the appellant, H. L. Berry, exe-

cuted his deed of conveyance of the right-of-way to the Mississippi State Highway Commission on March 13, 1939, he is deemed to have executed the conveyance with this statute of 1922 read into the same. Even so, the statute assured him that all such companies or associations should be responsible in damages for any injuries caused by the construction or use of an electric power line over the land described in the conveyance.

We should assume that the State Highway Commission in paying out the funds of the Highway Department did not intend to pay him for a second easement (not needed for highway purposes) to be utilized by an electric power company some twelve years later. So far as the actual intention of the parties to the conveyance is concerned, the grantor testified that the construction of an electric power line on the right-of-way was neither mentioned nor taken into consideration in determining the price or consideration that the State Highway Commission was to pay him for the right-of-way. His testimony to that effect is undisputed in the record. If he is to be bound by Chapter 291, Laws of 1922, wherein electric power companies or associations were authorized and empowered to build or construct their lines along a highway right-of-way, then it follows that such companies or associations in relying upon this statute are invoking the same in the light of their responsibility to pay "any damages for any injuries caused by such construction or use thereof."

The appellee Electric Power Association also invokes as a defense Subsection (f) of Section 8038, Code of 1942, brought forward from Chapter 47, Laws of 1930, granting the State Highway Commission the authority:

"To make proper and reasonable rules, regulations and ordinances for the placing, erection, removal or relocation of telephone, telegraph or other poles; sign boards, fences, gas, water, sewerage, oil or other pipe lines, and other obstructions that may in the opinion of the Mississippi highway commission contribute to the

hazard upon any of the state highways, or in any way interfere with the ordinary travel, upon such highways or the construction, or reconstruction thereof, and to make reasonable rules and regulations for the proper control thereof. Any violation of such rules or regulations or non-compliance with such ordinances shall constitute a misdemeanor.

"And whenever the order of the state highway commission shall require the removal of, or other changes in the location of telephone, telegraph or other poles, sign boards, gas, water, sewerage, oil, or other pipe lines or other similar obstructions, the owners thereof shall at their own expense move or change the same to conform to the order of the said state highway commission. Any violation of such rules or regulations, or non-compliance with such orders shall constitute a misdemeanor;"

However, we are of the opinion that this subsection in the enumeration of the powers of the State Highway Commission merely confers upon the Commission in the exercise of its jurisdiction over the highways the power to supervise the location, etc. of telephone, telegraph or other poles, and other obstructions so as to prevent them from constituting a hazard or interfering with the ordinary travel upon the highways, and that this grant of authority to determine the location of poles and wires upon the highway presupposes that a telephone, oil or gas company or electric power company has obtained the right to place their poles, pipes, or wires upon the highway right-of-way in the exercise of the right of eminent domain for that purpose as contemplated by Section 2780, Code of 1942, as amended, as brought forward from Chapter 291, Laws of 1922, which makes such telephone, oil and gas, and electric power companies or associations responsible in damages for any injuries caused by such construction or use thereof. Section 8038, supra, does not undertake to confer upon the State Highway Commission the authority to grant to tele-

phone, oil and gas pipe lines, and to electric power lines, the use of the highway right-of-way for the purpose of constructing their poles and telephone and electric power lines or gas pipe lines, without regard to the constitutional right of an abutting landowner to recover damages where his private property may have been damaged for such public use.

The appellee Electric Power Association invokes the further defense of Section 5474, Code of 1942, which enumerates the powers of electric power associations, including subsection (6) of the said Section 5474, which confers upon electric power companies or associations the right: "To use any right of way, easement or other similar property right necessary or convenient in connection with the acquisition, improvement, operation or maintenance of a system, granted by the State or any political subdivision thereof, provided that the governing body of such political subdivision shall consent to such use; and to have and exercise the power of eminent domain in the manner provided by the condemnation laws of this State for acquiring private property for public use, such right to be paramount except as to the property of the State or of any political subdivision thereof."

However, it will be noted that this subsection of the statute contemplates that such electric power companies or associations shall not only obtain the consent of the State Highway Commission, if applicable thereto, but also contemplates the exercise of the power of eminent domain in the manner provided by the condemnation laws of this State for acquiring private property for public use — a necessary prerequisite where the placing of poles and electric power lines on the right-of-way would constitute an additional burden or servitude upon the estate granted unto the State Highway Commission by an abutting landowner.

The appellee finally invokes as a defense Section 1506, Code of 1930, Chapter 233, Laws of 1926, (Section 2778,

Code of 1942), which reads as follows: "All companies or associations of persons incorporated or organized for such purposes are authorized and empowered to erect, place and maintain their posts, wires and conductors along and across any of the public highways, streets or waters and along and across all turnpikes, railroads and canals, and also through any of the public lands; but the same shall be so constructed and placed as not to be dangerous to persons or property; nor interfere with the common use of such roads, streets, or waters; nor with the use of the wires of other wire-using companies; or more than is necessary with the convenience of any landowner." However, this statute must be construed in connection with Section 1508, Code of 1930, Chapter 291, Laws of 1922, brought forward as Section 2780, Code of 1942, as amended, and which provides that such companies or associations "shall be responsible in damages for any injuries caused by such construction or use thereof." Moreover, the said Section 1506, Code of 1930, (Section 2778, Code of 1942), must also be construed in connection with Section 17 of our State Constitution which guarantees compensation to any landowner whose property is taken or *damaged* for public use. The argument on behalf of the Electric Power Association that the several statutes hereinbefore set forth have the effect of authorizing the Association, holding a permit from the State Highway Commission, to place its poles and power lines on the right-of-way, without being accountable to an abutting landowner for any actual damage caused thereby to his property, overlooks the fact that the right of the owner of the fee in that behalf was beyond the control of the Legislature. His right is predicated upon the constitutional guarantee that private property shall not be taken or damaged without just compensation.

In Burrall v. American Telegraph Company, 224 Ill. 266, 272, 8 L. R. A. (N. S.) 1091, 79 N. E. 705, the Court said: "If the land is needed for a public use the law pro-

vides a way for acquiring it, and the constitution prohibits its appropriation for such a use without compensation.''

In 18 Am. Jur. 834, Section 204, it is recognized that the authorities which hold that the poles and wires of the telegraph and telephone lines are not an additional servitude upon a public highway are based upon the reasoning that a message sent along the wires in a street or on a highway right-of-way takes the place of a messenger and thus relieves the street or highway of much of the use to which it would otherwise be subjected. But this reasoning, if sound, is not applicable to an electric power line which has no relation to promoting or lessening public travel over a highway.

The deed of conveyance from the appellant to the State Highway Commission on March 13, 1939, is similar in all material respects, except as to the description of the land, number of the highway project, the amount of the consideration, etc., to the deed of conveyance executed by J. S. Whitworth and wife on January 4, 1939, to the Mississippi State Highway Commission, which was involved in the case of Whitworth, et al. v. Mississippi State Highway Commission, 203 Miss. 94, 33 So. 2d 612, and which is fully set forth in the report of that case. Each of the said conveyances is a warranty deed, and each recites that it is ''understood and agreed that the consideration herein named is in full payment and settlement of any and all claims or demands for damage accrued, accruing, or to accrue to the grantors herein, * * * for or on account of the construction of the proposed highway, change of grade, water damage, and/or any other damage, right or claim whatsoever.'' We are therefore of the opinion that the consideration paid was only ''for or on account of the construction of the proposed highway'' mentioned in the deed, and for any other damage, right or claim whatsoever *resulting from the construction of the proposed highway;* and that if the grantor is presumed to have executed the deed in the light of the sections of the Code hereinbe-

fore quoted, then the grantee in the right-of-way deed is presumed to have accepted the deed in the light of Section 17 of the State Constitution, supra, which conferred upon the landowner the right to recover compensation for any damage to his property which may not have been compensated for in the consideration paid for the deed.

In the case of Whitworth, et al. v. Mississippi State Highway Commission, supra, it was held on Suggestion of Error that Section 8023, Code of 1942, giving to the State Highway Commission the control and supervision of highways and the right of eminent domain, and Section 8038, Code of 1942, authorize the Commission " 'to obtain and pay for rights of way,' and to this end 'may condemn. . . or acquire by gift or purchase lands containing road building materials . . . to condemn or to acquire by gift or purchase lands necessary for the safety and convenience of traffic.' " And the Court further held that "The extent of authority in the cited sections contemplates the acquisition of rights of way to the end that a highway system may be constructed and maintained. That it may so acquire 'land or other property' is to be interpreted in the light of a means by which it may attain its ordained end, to wit, that such lands 'be necessary for a state highway system.' "

The Court then proceeded to say further in the Whitworth case that "We are of the opinion that the purpose of our highway statutes, Code 1942, Title 30, is the acquisition of lands solely for highway purposes." The deed of conveyance in the Whitworth case purports to convey a fee simple title, that is to say there are no limitations on the estate purported to be conveyed. The same is true in the instant case, but the Court in the Whitworth case further said: "We are of the opinion therefore that in this case the appellee acquired no more than it was empowered to acquire, that is to say, a right of way or easement." In other words, the Court held

that the Highway Commission acquired no greater estate than it was entitled to condemn under eminent domain. ▪▪▪ The general rule is that the power of eminent domain should be construed favorably to the landowner ▪▪▪ and that no greater estate can be taken than the particular use requires.

▪▪▪ In 18 Am. Jur. 837, Section 206, in the chapter on Eminent Domain, it is said: "It is quite generally conceded that electric light and power lines in a public street or highway, so placed for the commercial purpose of furnishing electric current to private individuals or concerns constitute an additional burden or easement for which the owner of the abutting property, who also owns the fee in the street or highway, is entitled to compensation."

In Stowers v. Postal Telegraph & Cable Company, 68 Miss. 559, 9 So. 356, it was stated that: "There is some conflict in the authorities, but the decided weight is to the effect that telegraph companies form no part of the equipment of a public street, but are foreign to its use, and that where the abutting owner is the owner of a fee to the centre of the street he is entitled to additional compensation for the additional burden placed upon his land." Citing a number of cases from other jurisdictions. The Court further stated in its opinion that it was not competent for the City of Vicksburg to authorize the erection of telegraph wires on a street right-of-way by a telegraph company to the injury of the abutting landowners without compensation to them for the injury, for the reason that the right "is secured by constitutional provision, and can only be obtained by the exercise of the right of eminent domain, and upon due compensation being first made."

In the case of Town of Hazlehurst v. Mayes, 84 Miss. 7, 36 So. 33, the Court held that the owner of land abutting on a street, whether he owned the fee to the street or it be in the municipality, is entitled to compensation for any additional servitude placed on his property by

any use of the street not incidental or necessary to its enjoyment as a street by the public. In that case the Court recognized the right of a municipality to *light* its streets for safe passage by the traveling public, citing the case of Gulf Coast Company v. Bowers, 80 Miss. 581, 32 So. 114, but as hereinbefore stated there is no relation between the operation of an electric power line along a rural highway and public travel thereover. A lengthy annotation under the case of Query v. Postal Telegraph & Cable Company, 178 N. C. 639, 101 S. E. 390, is found in 8 A. L. R. 1293, wherein there is cited the case of Stowers v. Postal Telegraph & Cable Company and cases from Illinois, Kentucky, Virginia, Maryland, Nebraska, New York, New Jersey, Ohio, Texas, Wisconsin and other states holding that where the additional improvement has no relation to public travel, it is an added servitude for which the abutting landowner is entitled to compensation for any damages to his property, when the improvement is not within the purposes of the original easement.

In the case of Post v. Suffolk Light, Heat and Power Company, 136 N. Y. Supp. 401, the New York Court held in effect that the placing of electric power poles in the highway right-of-way would be an additional burden which the Legislature cannot authorize, without compensation being made therefor to the owners of the abutting property on the highway, unless the electric power line in some manner contributed to serving the purpose of public travel on the highway.

In Southwestern Bell Telephone Company v. Biddle, 186 Ark. 294, 54 S. W. 2d 57, the Court, in construing the statutes of that state which allowed the construction and operation of telephone and telegraph lines along and over the public highways, said: ''We also think that the erection of a telephone line upon a public highway along lands of adjoining owners in which the public only has an easement for use as a highway would not prevent the owner of the land from collecting dam-

ages for the new servitude to which his land is subjected, such use not having been in contemplation when the easement was taken or granted.''

In the case at bar the six poles and the high voltage electric power lines were erected on the highway right-of-way in question some twelve years after the right-of-way was conveyed by the appellant to the State Highway Commission and the deed of conveyance expressly provided that it was understood and agreed that the consideration paid was for and on account of the construction of the proposed highway. Moreover, under the decision in the Whitworth case, supra, the State Highway Commission. would not have been warranted in using the funds of the highway department to pay for an additional easement for the use of an electric power association, since it was expressly held in that case, as hereinbefore stated, that the Commission had the right to acquire the easement solely for highway purposes. The case further held that the grantee could obtain by purchase no greater estate than it could have acquired by condemnation. Most assuredly, it cannot be said that if the appellant had been unwilling to convey the right-of-way by deed to the State Highway Commission, an easement could not have been condemned by the State Highway Commission on March 13, 1939, both for highway purposes and for the construction of the electric power line, since the State Highway Commission derived its authority to acquire the right-of-way by statutes which have been construed to limit such right to highway purposes.

Finally, we are not unmindful of the decision in the case of State, ex rel York v. Walla Walla County decided by the Supreme Court of the State of Washington and reported in 172 A. L. R. 1001, 182 P. 2d 577, decided under a statute of that state, the constitutionality of which was not raised in the case, and which held that a co-operative electric association could place its lines along the right-of-way of county roads without

compensating the abutting landowners whose property may have been damaged thereby, but we are unable to follow that decision, which disregarded or held inapplicable a constitutional provision of that state like unto Section 17 of our State Constitution, and upon the theory that the erection of the power line was not an unreasonable interference with the rights of the abutting landowners. The constitutional provision in question, however, contains no exemption from liability to pay compensation for damage to private property for a public use provided the interference with the rights of the abutting landowners is a reasonable interference. That decision recognizes that the abutting landowners would have been entitled to compensation, even though the use of the highway by the electric power line had been authorized, provided the use of the right-of-way for that purpose was an unreasonable encroachment on the rights of the abutting landowners. Whereas, we think that the test should be whether or not the rights of an abutting landowner have been encroached upon at all, to his damage. The Court in that case cited no authority to support its position except a few of its own prior decisions.

Even though there are decisions from other jurisdictions which hold that the erection of a telephone line on a highway right-of-way for sending messages has the effect of dispensing with the necessity to send a messenger over the highway to convey the information transmitted by telephone, those decisions do not support the theory that an electric power line serves the purpose of a highway for public travel, or that the use of such a line has any relation to public travel.

We are of the opinion that the decree appealed from should be affirmed to the extent that it denied the mandatory injunction sought for the purpose of requiring the removal of the poles and electric power lines from the highway right-of-way, and also to the extent that the decree denied punitive damages. The electric

power company has the right to maintain its power line on the right-of-way, but subject to the rights of the complainant under Section 17 of our State Constitution, and we also think that the appellee Electric Power Association placed its line on the right-of-way in good faith, upon legal advice of its counsel, and is not liable for punitive damages for so doing, even though its action in that behalf was over the written protest of the complainant. But we are of the further opinion that the case should be reversed and remanded for a new trial as against the appellee Electric Power Association on the question of actual damages, no relief as against the State Highway Commission having been sought by the bill of complaint.

We also affirm the action of the chancellor in setting aside the decree pro confesso taken against the defendant Electric Power Association, for the reason that the chancellor was warranted in concluding that the failure of such defendant to file its answer within the time required by law was not due to willful inattention or indifference on the part of counsel who had been instructed by the defendant to file the same, and that the delay occasioned thereby was through mistake and was not prejudicial or to the injury of the complainant. Griffith's Mississippi Chancery Practice, 2nd Ed., Section 269.

Affirmed in part, reversed in part, and remanded.

*Hall, Kyle, Holmes* and *Arrington, JJ.* concur.

GILLESPIE, J., dissenting.

The issue here is not one involving a controverted point of constitutional law; rather it is one involving solely the question of whether the poles and lines of an electric power association constitute an additional servitude entitling the owner of the fee to additional compensation. If there is no new or additional servitude, Section 17 of the Constitution has no application.

The majority opinion correctly states that the constitutional guarantee aainst the taking or damaging of private property is self-executing, and can not be overridden by the public policy of the State. The statutes authorizing the construction of electric power lines along highways of this State do more than declare the public policy of the State in reference to the use of the highway rights-of-way; they define the uses to which the highway rights-of-way may be put and the uses authorized by these statutes are not inconsistent with the traditional public uses for which highways exist. 25 Am. Jur., Highways, Par. 171, p. 467.

Thus the statutes define certain burdens of the easement acquired for highway purposes. When the appellant executed his right-of-way deed to the Mississippi State Highway Commission, he conveyed an easement with these servitudes a part of the estate conveyed, and no constitutional question exists. Property already conveyed to the State is not the subject of any constitutional protection.

Moreover, I think the statutes referred to are declarative of the general custom and usage. Highway rights-of-way have been used for many years to accommodate the facilities for transporting messages and electrical energy without additional compensation to the owner of the fee, and the universal acceptance on the part of the public that the servitudes imposed by highway right-of-way easements expand to accommodate advances in methods and means used in transporting passengers and commodities without any additional compensation to the owner of the fee.

But quite apart from any weight or consideration being given to the statutes, I believe there is sound reason why electric power associations have the right to construct and maintain electrical power lines over the public highways of this state without additional payment to the owner of the fee, and consistent with official permission, regulation and control.

When the case of Stowers v. Postal Telegraph and Cable Company, 68 Miss. 559, 9 So. 356, was decided (1891), highway transportation consisted of pedestrians, animals, and animal drawn vehicles. The motor vehicle age was yet to come; the incandescent bulb had recently been invented; the use of electric power for lighting purposes was practically unknown; the first practical telephone had been patented only a few years; and telephone and power lines were unknown on the highways of this State. Vast changes have taken place in highway use, communications, and transportation since 1891. For many years now the highways have accommodated, without additional compensation to the owner of the fee, and with universal public acceptance, motor vehicles of great variety and fantastic speeds as compared to horse-drawn vehicles; highways have long since become the place where huge trucks carry substantial amounts of freight, and buses maintain regular passenger schedules. Likewise, for many years now, and by what I think to be universal public acceptance, the highways have been used as a place to maintain telephone and electric power lines for the transportation of messages and electrical energy — and these uses are as much in the public interest as is the vehicular traffic. The transportation of electrical energy along the highways for delivery to home and businesses is necessary for the public convenience. Electrical energy is a daily household necessity. It was not so in 1891. All these changes in the servitude of the highway easements came about by common consent of the public and the owners of the fee under the rights-of-way. This progress and these changed conditions cannot be ignored by the courts.

That the law is not inflexible is well settled. The law is progressive and expansive, adapting itself to new relations, interests, and conditions created by the progress of society.

Burrall v. American Telegraph Co., 224 Ill. 266, 8 L. R. A. (N. S.) 1091, 79 N. E. 705, was decided in 1906, which was before the law evolved to meet the needs and demands of more recent developments of society. In that case there was no statute giving the telegraph company the right to erect poles and lines on the highway. I think that case is inapplicable here.

The majority opinion refers to 18 Am. Jur. 834, Par. 204. The pertinent portion of that text is as follows: "As to whether a telegraph or telephone line can be erected and maintained upon a public street without compensation to the owner of the fee is a question upon which there is a direct conflict of authority. On one side it is said that a telegraph or telephone line is but an improved method of subjecting the streets of a city to an old use, and that the poles and wires are just as necessary adjuncts to this new method as are the poles and wires of a street railway or an electric light plant, erected in substantially the same manner, and no more obstructive. Accordingly, many authorities are to the effect that the poles and wires of a telegraph or telephone line are not an additional servitude upon a public highway, and they are supported by the very sound reasoning that a message sent along the wires in a street takes the place of a messenger and thus relieves the street of much of the use to which it would otherwise be subjected. On the other hand, it is argued that the use of streets for the permanent maintenance of poles and wires occupying a portion of the street is a use not contemplated in the laying out of streets generally; and, reasoning on this basis, it is the rule in many other jurisdictions that a telegraph or telephone line is an additional servitude upon a public highway."

If it is sound reasoning to say that since telephone and telegraph messages take the place of the messenger and relieves the streets of much of the use to which it would otherwise be subjected, and, therefore, the telephone and telegraph poles and lines are not an addi-

tional servitude, why is it not just as sound to hold that electric power lines are not an additional servitude because the electricity takes the place of the coal, kerosene, and wood that would otherwise have to be hauled to the residences and businesses and industries along the highway?

The case of Whitworth v. Mississippi State Highway Commission, 203 Miss. 94, 33 So. 2d 612, is cited in the majority opinion. That was a suit by the State to cancel the claim of the grantor of the right-of-way to the oil, gas and other minerals underlying the right-of-way. The case held that a right-of-way easement only was acquired under the statutes, notwithstanding the deed purported to convey the fee. The issue of the extent of the easement was not in any manner involved.

The majority opinion cites 18 Am. Jur., p. 837, par. 206. That text was prepared without any apparent consideration of any statutes such as those which our legislature had enacted prior to the acquisition by the State Highway Commission of the easement from Berry.

In 39 C. J. S. 1078-1079, Highways, par. 139, it is said: "While it has been held that the easement includes the right to erect telephone, telegraph, and electric light and power poles, there is also authority to the contrary."

The authorities all agree that an abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with the public, and certain private rights which arise from his ownership of property contiguous to the highway, and these rights exist regardless of whether he owns the fee of the highway. These rights include (1) the right of access, (2) view, (3) light and air, (4) lateral support, (5) the right to have the highway kept open as a thoroughfare, and (6) the right to use the right-of-way not inconsistent with the public use. 39 C. J. S. 1079, par. 141. The text of the last mentioned authority includes the statement that "the mere disturbance of the rights of the abutting own-

ers by the imposition of new uses on the highway consistent with highway purposes must be tolerated.''

Highways are established and maintained primarily for the convenience of public travel. But there are numerous other purposes for which highways may be used such as for water mains, gas pipes, telephone and telegraph lines, and electric power lines. State v. Board of Commissioners of Walla Walla County, 184 P. 2d 577, 172 A. L. R. 1001; Annotation, 172 A. L. R. 1020. And these are of a public nature. 25 Am. Jur. 467, Highways, par. 171.

The easement acquired by the State is not confined to the right of passage or travel; for it is a matter of common knowledge, and, therefore, of law, that an easement in land acquired by the public creates a burden on the fee coextensive with all the incidents of the easement. 1 Elliott, Roads and Streets, par. 495; 25 Am. Jur., Highways, Par. 171.

As against the public, however, his (owner of fee) privileges vary conversely to the extent of the actual public use. He may make every use of the land within the limits of the highway, above, upon, or below the surface of the ground, that does not interfere with the public easement as it is actually exercised, and a country road only occasionally travelled may constitute only a slight incumbrance on his fee. As population increases and the public needs advance, the owner's privileges are diminished and he may thereby suffer damage. He is not entitled to compensation, because such damage was paid for when the way was laid out and the easement of indefinite public travel taken. It would prove an intolerable nuisance to the landowners, the courts, and the public, if a whole new set of actions was brought whenever a new pipe or wire was laid in an existing street. 3 Nichols on Eminent Domain, Third Ed., par. 10.1.

It seems to be the general rule that where there is a conflict between the rights of the public and the owner of the abutting property, the rights of the owner of the

fee are subordinate to the public. As the public requirements grow larger, the privileges of the owner of the fee decreases. 3 Nichols on Eminent Domain, Third Ed., 235, par. 10.211(2).

It has been generally held that sewers and drains may be laid in a public highway without additional compensation to the owners of the fee. Water pipes for the purpose of supplying the public with water are considered a proper use of the easement for highway purposes. There has been little opposition to the laying of gas pipes for distributing illuminating gas, but some courts have held that such pipes may not be laid without compensation to the owners of the fee. With respect to the overhead use of highways by the stringing of wires on poles, there has been much litigation and decided conflict of opinion. Most of the litigation has been in reference to telephone and telegraph poles and wires. It appears that a slight majority of the states in which the question has arisen have held that overhead telephone and telegraph lines constitute an additional servitude upon public highways; although a nearly equal number have taken the opposite view. There is also a conflict of authority on the question of the erection of poles and lines along highways for use in distributing electrical energy for light and power to be used by the homes and businesses along the highway. See 3 Nichols on Eminent Domain, Third Ed., Chap. 10.

Most of the authorities hereinabove discussed, except the case of State v. Board of Commissioners of Walla Walla County, supra, did not involve special statutes defining the special uses to which highways may be put such as those enacted by the Mississippi Legislature prior to the acquisition of the right-of-way from the appellant Berry.

Following the case of State v. Board of Commissioners of Walla Walla County, supra, and at 172 A. L. R. 1020, there is an annotation on the subject, "Use of Streets and Highways by Co-operative Utility," wherein

it is said, in part, as follows: "Great impetus was given to the establishment of such electrical co-operatives by the passage, in 1936, of the Federal Rural Electrification Act, 7 USCA, Sec. 901 et seq., 2 FCA, title 7, Secs. 901, et seq. And the building of great dam establishments with attendant creation and supply of power, such as those in the Pacific Northwest of Grand Coulee and Bonneville, and, more notably, the Tennessee Valley project, have spurred to greater and greater extent the establishment of co-operative electrical companies or projects. The question therefore becomes of considerable importance and constantly increasing practical significance in the law whether such co-operative utilities, under the laws in force and effect in a particular state, have the right to occupy, with their apparatus and equipment, the public streets and highways, and, whether, under such laws, the officers of local political subdivisions have the power to grant to such co-operatives a permit or franchise to use the public highways and streets . . . With respect to the law of highways, there seems to be little doubt, in modern American law, that where proper authorization is secured in necessary cases, and when authority has been granted by the state, local authorities may grant permission to different individuals, corporations, and projects to use the streets and highways for special, permissive, and incidental uses. . . Finally, since the rights of abutting landowners may be involved, and since the use of the streets and highways for co-operative utility purposes constitutes, at least by way of argument, new, additional, and other uses of such streets and highways, the question arises whether such use by co-operative utilities imposes an additional servitude upon the road or street for which compensation must be paid. This question of compensation for additional servitude under similar circumstances is one which has been complicated by many factors, has been much litigated in the American courts, and has resulted in many different determinations, since the authorities

are divided upon almost all specific factual aspects of the problem.''

As will be noted hereinafter, the easement in the case before us was obtained under specific statutory authorization. The law, as developed, and concerning which there has been so much conflict in authority, was based on the general law governing the use of highways and its development, and not upon specific statutory authority as is present in the case before this Court.

The case of Whitworth v. Mississippi State Highway Commission, supra, decided that the Mississippi State Highway Commission, under a right-of-way deed purporting to convey the fee, actually acquired only an easement ''necessary for a state highway system.'' It is highly significant that the Court did not define the extent of the servitude of the easement, but said ''the estate acquired by the appellee (Highway Commission) is measured by the language, not of the deeds, of the statutes.'' (Emphasis and words in parenthesis added). What statutes? Certainly the Court did not mean Section 8023 alone. It must have meant those statutes which ''measure'' the estate acquired — all of the statutes on the subject. The following statutes are the ones that measure the estate conveyed by Berry to the State Highway Commission:

Section 8023, which defines the width, states that the right-of-way must be ''necessary for a state highway system,'' or for the purpose of obtaining ''road building materials,'' or for the promotion of ''the safety and convenience of traffic.'' Subsection (f) of Section 8038 provides: ''(f) To make proper and reasonable rules, regulations and ordinances for the placing, erection, removal or relocation of telephone, telegraph or other poles; sign boards, fences, gas, water, sewerage, oil or other pipe lines, and other obstructions that may in the opinion of the Mississippi highway commission contribute to the hazard upon any of the state highways, or in any way interfere with the ordinary travel, upon such high-

ways or the construction, or reconstruction thereof, and to make reasonable rules and regulations for the proper control thereof. Any violation of such rules or regulations or non-compliance with such ordinances shall constitute a misdemeanor."

Chapter 184, Laws of 1936, known as the "Electric Power Association Act," was enacted for the purpose of encouraging and promoting the fullest possible use of electrical energy; authorizing the organization of associations such as the appellee in this case; authorizing such associations to exercise the right of eminent domain, and subsection 6 of Section 5474, Code of 1942, provides:

"(6) To use any right of way, easement or other similar property right necessary or convenient in connection with the acquisition, improvement, operation or maintenance of a system, granted by the State or any political subdivision thereof, provided that the governing body of such political subdivision shall consent to such use; and to have and exercise the power of eminent domain in the manner provided by the condemnation laws of this State for acquiring private property for public use, such right to be paramount except as to the property of the State or of any political subdivision thereof."

Section 2780, Mississippi Code of 1942 (Chapter 291, Laws of 1922), as amended, provides: "Right of eminent domain granted to pipe lines:—All companies or associations of persons, incorporated or organized, for the purpose of building or constructing pipe lines and appliances for the conveying and distribution of oil or gas or for the purpose of constructing, maintaining and operating lines for transmitting electricity for lighting, heating and power purposes, are hereby empowered to exercise the right of eminent domain in the manner now provided by law, to build and construct the said pipe lines and appliances along or across highways, waters, railroads, canals, and public lands, above or below

grounds, but not in a manner to be dangerous to persons or property, nor to interfere with the common use of such roads, waters, railroads, canals and public lands. The board of supervisors of any county through which any such line may pass, shall have the power to regulate, within their respective limits, the manner in which such lines and appliances shall be constructed and maintained on and above the highways and bridges of the county and all such companies or associations shall be responsible in damages for any injuries caused by such construction or use thereof.''

Section 2778, Mississippi Code of 1942, enacted as Chapter 233, Laws of 1926, provides: ''Erect and maintain poles, along, on, and across highways: —All companies or associations of persons incorporated or organized for such purposes are authorized and empowered to erect, place and maintain their posts, wires and conductors along and across any of the public highways, streets or waters and along and across all turnpikes, railroads and canals, and also through any of the public lands; but the same shall be so constructed and placed as not to be dangerous to persons or property; nor interfere with the common use of such roads, streets, or waters; nor with the use of the wires of other wire-using companies; or more than is necessary with the convenience of any landowner.''

All these statutes were in force long before appellant executed the right-of-way deed to the Mississippi State Highway Commission, which deed purported to convey a fee simple title. Appellant has the right to rely on the Whitworth case and to say to the commission: ''I give you a deed purporting to convey a fee simple title, but the law provides for the estate to be measured by the language, not of my deed, but of the statutes.'' But appellant should not be heard to say further: ''But not all of the statutes — only those I took into consideration at the time I signed the deed.''

Appellant also contends, and the majority opinion gives some weight thereto, that (1) since appellant did not contemplate the construction of the electric power lines on the right-of-way, the servitude was not considered in fixing the purchase price, and (2) the State Highway Commission was not warranted in paying out public funds for the additional easement for use of an electric power association. Neither contention is tenable. The amount paid for the right-of-way, and the damage to the owner, in practical effect, was approximately the same whether a fee or an easement was taken; and the extent of the servitude of the easement would have little or no effect on the purchase price or the damages to the owner. This is a matter of common knowledge and was judicially recognized in Nicholson v. Board of Mississippi Levee Commissioners, 203 Miss. 71, 33 So. 2d 604, and Whitworth v. Mississippi State Highway Commission, supra.

It is my opinion that the appellee had the right to construct and maintain its power lines on the right-of-way in question without additional compensation to the owner of the fee. The owner of the abutting property and the fee under the highway would have a right of action for any unreasonable interference resulting in special or peculiar injury to his property, differing in kind from the inconvenience or undesirability of the existence of such poles and lines. The chancellor found against the appellant, and I think the case should be affirmed.

I am authorized to state that Justices Roberds, Lee and Ethridge concur in this dissent.